585 F.2d 1382
 PIERCE & STEVENS CHEMICAL CORP., Plaintiff-Appellee,
v.
UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION,
Defendant-Appellant.
No. 404, Docket 78-6135.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 3, 1978.
Decided Dec. 14, 1978.
 
 William L. Rieth, Buffalo, N.Y. (Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y., of counsel), for plaintiff-appellee.
 Mark N. Mutterperl, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C. (Barbara Allen Babcock, Asst. Atty. Gen., Washington, D.C., Richard J. Arcara, U. S. Atty., Buffalo, N.Y., Leonard Schaitman, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., of counsel), for defendant-appellant.
 Victor H. Kramer, Charles E. Hill, Alan R. Schwartz, Washington, D.C., Consumer Federation of America, amicus curiae.
 Before KAUFMAN, Chief Judge, and FEINBERG and TIMBERS, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 In the past decade and a half the Congress of the United States has enacted many complex statutes, a good number of which present difficult questions of interpretation.[1] This appeal involves a potential clash between two such laws: the Freedom of Information Act, 5 U.S.C. § 552 (FOIA), and the Consumer Product Safety Act, 15 U.S.C. §§ 2051-2081. The Consumer Product Safety Commission appeals from an order of the United States District Court for the Western District of New York, John T. Elfvin, J., which permanently restrained the Commission from disclosing to one Adele Larson three documents relating to plaintiff Pierce & Stevens Chemical Corp. The basis of the injunction was the Commission's failure to comply with various requirements of the Consumer Product Safety Act. For reasons set forth below, we hold that those provisions do not apply to Ms. Larson's request under the FOIA, and we reverse the judgment of the district court.
 
 
 2
 * There is no dispute about the relevant facts. In early 1975, Adele Larson informed the Commission that she used a cleaning fluid manufactured by Pierce & Stevens and that a "spontaneous fire" had destroyed her house and injured her. Ms. Larson asked the Commission to supply her with a copy of the label for this product and inquired whether there was "any history of problems . . . with (its) use." After the Commission replied and sent copies of the labels, Ms. Larson asked, among other things, "(d)oes the labeling conform with U. S. safety regulations." The Commission replied that inspection of the Pierce & Stevens plant in Buffalo in November 1969 and October 1970 "revealed possible labeling deficiencies." But before sending copies of the two reports, the Commission advised Ms. Larson that it was required to give Pierce & Stevens a chance to review the documents for confidential commercial and trade secret information which should be withheld.
 
 
 3
 In April 1975, the Commission sent copies of the two reports, and a related two-page letter, to plaintiff Pierce & Stevens for its view on whether the documents contained any such protected information. The company replied that the documents should not be disclosed at all because the Commission had not complied with section 6(b)(1) of the Consumer Product Safety Act. That section, which is reproduced and discussed in greater detail below, requires the Commission to provide the manufacturer or labeler of a consumer product with notice and an opportunity to comment prior to disclosure of information pertaining to that product, and to take reasonable steps to insure the accuracy of the information. Pierce & Stevens also claimed that the documents contained confidential and trade secret information and were protected from disclosure by the intra-agency exemption of the FOIA.[2] The Commission accepted many of the company's assertions regarding trade secrets and confidential information,[3] but otherwise rejected its claims.[4] The Commission offered, however, to include in its response to Ms. Larson any statement from the company about "alleged inaccuracies," if received within 10 days.
 
 
 4
 In October 1975, Pierce & Stevens brought suit in the United States District Court for the Western District of New York to enjoin the Commission from releasing the documents. In October 1977, Judge Elfvin granted a preliminary injunction on the ground that the Commission had failed to comply with the provisions of the Consumer Product Safety Act, 439 F.Supp. 247. After proceedings in this court,[5] the judge granted a permanent injunction in July 1978. This appeal followed.
 
 
 5
 The Freedom of Information Act, 5 U.S.C. § 552, was enacted in 1966, and became effective one year later.[6] The statute, which was the culmination of years of congressional effort, amended the public information provisions of the Administrative Procedure Act of 1946 (APA).[7] That section of the APA had proved to be less than satisfactory in achieving disclosure of information to the public. The purpose of the FOIA was to correct the deficiencies of the APA in this area and to improve public access to information held by government agencies. See generally S.Rep. No. 813, 89th Cong., 1st Sess. (1965); H.R.Rep. No. 1497, 89th Cong., 2nd Sess. (1966), Reprinted in, U.S.Code Cong. & Admin.News 1966, p. 2418. Thus, the FOIA did away with direct interest as a condition of obtaining information,[8] narrowed the standards for allowing an agency to withhold information and provided for judicial review of such denial.[9] See generally Note, The Freedom of Information Act: A Seven-Year Assessment, 74 Colum.L.Rev. 895, 896-98 (1974). The statute treats various types of agency information in different ways. Some must be published in the Federal Register; some must be made available for public inspection and copying; and other reasonably described records are obtainable on request to an agency. And nine categories of information are specifically exempted from disclosure,[10] although the list of exemptions is immediately followed by the statutory declaration that the section "does not authorize withholding of information or limit the availability of records to the public, except as specifically stated . . . ."[11] See generally K. Davis, Supra note 10, at § 3A.5; Project, Supra note 10, 73 Mich.L.Rev. at 1158-59. There is no doubt that the "basic purpose" of the FOIA is "a general philosophy of full agency disclosure." See Dept. of Air Force v. Rose, 425 U.S. 352, 360-61, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976); EPA v. Mink, 410 U.S. 73, 80 & n. 6, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). But the burden of obtaining the information is on an individual who seeks it; his request must be reasonably described, and he may have to pay the costs involved in obtaining copies.[12] See Gellhorn, Adverse Publicity by Administrative Agencies, 86 Harv.L.Rev. 1380, 1421-23 (1973).
 
 
 6
 The Consumer Product Safety Act was also the product of years of legislative labor. The National Commission on Product Safety, created in 1967,[13] recommended a proposed bill in its final report in 1970.[14] Debate in Congress thereafter focused mainly on whether to create a new agency or to give increased authority to the Food and Drug Administration and on whether the new statute should apply to food, drugs and cosmetics. The law was enacted in 1972 and provided for a comprehensive federal scheme of regulating consumer product safety.[15] The statute created a new, independent regulatory agency, the Consumer Product Safety Commission, which was given authority to establish safety standards for consumer products and strong enforcement powers.[16] Most significantly for this appeal, the Commission is directed to obtain information relating to product-related injuries and to communicate that information to the public.[17] Both the Consumer Product Safety Act, then, and the FOIA evidence a strong legislative purpose to transmit agency information to the public, but the latter requires individual initiative to obtain it.
 
 
 7
 With this background in mind, we must consider whether section 6(b)(1) of the Consumer Product Safety Act applies to a request for information under the FOIA,[18] a question on which there is little authority on point.[19] The entire section 6, of which subsection (b)(1) is a part, deals with public disclosure of information and provides as follows:
 
 
 8
 § 6. Public disclosure of information
 
 
 9
 (a)(1) Nothing contained in this chapter shall be deemed to require the release of any information described by subsection (b) of section 552 of Title 5 or which is otherwise protected by law from disclosure to the public.
 
 
 10
 (2) All information reported to or otherwise obtained by the Commission or its representative under this chapter which information contains or relates to a trade secret or other matter referred to in section 1905 of Title 18 shall be considered confidential and shall not be disclosed, except that such information may be disclosed to other officers or employees concerned with carrying out this chapter or when relevant in any proceeding under this chapter. Nothing in this chapter shall authorize the withholding of information by the Commission or any officer or employee under its control from the duly authorized committees of the Congress.
 
 
 11
 (b)(1) Except as provided by paragraph (2) of this subsection, not less than 30 days prior to its public disclosure of any information obtained under this chapter, or to be disclosed to the public in connection therewith (unless the Commission finds out that the public health and safety requires a lesser period of notice), the Commission shall, to the extent practicable, notify, and provide a summary of the information to, each manufacturer or private labeler of any consumer product to which such information pertains, if the manner in which such consumer product is to be designated or described in such information will permit the public to ascertain readily the identity of such manufacturer or private labeler, and shall provide such manufacturer or private labeler with a reasonable opportunity to submit comments to the Commission in regard to such information. The Commission shall take reasonable steps to assure, prior to its public disclosure thereof, that information from which the identity of such manufacturer or private labeler may be readily ascertained is accurate, and that such disclosure is fair in the circumstances and reasonably related to effectuating the purposes of this chapter. If the Commission finds that, in the administration of this chapter, it has made public disclosure of inaccurate or misleading information which reflects adversely upon the safety of any consumer product, or the practices of any manufacturer, private labeler, distributor, or retailer of consumer products, it shall, in a manner similar to that in which such disclosure was made, publish a retraction of such inaccurate or misleading information.
 
 
 12
 (2) Paragraph (1) (except for the last sentence thereof) shall not apply to the public disclosure of (A) information about any consumer product with respect to which product the Commission has filed an action under section 2061 of this title (relating to imminently hazardous products), or which the Commission has reasonable cause to believe is in violation of section 2068 of this title (relating to prohibited acts), or (B) information in the course of or concerning any administrative or judicial proceeding under this chapter.
 
 
 13
 (c) The Commission shall communicate to each manufacturer of a consumer product, insofar as may be practicable, information as to any significant risk of injury associated with such product.
 
 
 14
 Appellant Commission contends that the procedures of section 6(b)(1) apply only when the Commission itself publicly disseminates information on its own initiative, and not when the Commission merely responds to a request for information under the FOIA. Appellee Pierce & Stevens argues that section 6(b) (1) applies to all Commission disclosure of information and that the district judge properly held that the failure of the Commission to comply with the statute justified the injunctive order. Appellee also claims that the FOIA itself, because of so-called exemption three,[20] requires the Commission to withhold information until it meets the requirements of section 6(b)(1).
 
 
 15
 The questions thus posed are not easy to resolve but we believe that the Commission has the better of the controversy. As already indicated, the Consumer Product Safety Act envisions agency use of publicity to educate consumers. Thus, the statute requires the Commission to establish an Injury Information Clearinghouse to collect and analyze injury statistics and "disseminate" the information it collects.[21] One of the principal purposes of the Act is to "assist consumers in evaluating the comparative safety of consumer products." 15 U.S.C. § 2051(b)(2). Moreover, the phrase "public disclosure", used in the title to section 6 and repeated several times in subsection (b)(1), does imply something more than simply furnishing information upon request. Although the legislative history of section 6(b)(1) is sparse, there is some indication that Congress was concerned that the Commission might unfairly publicize inaccurate information that might harm the reputation of a particular product or business.[22] Obviously, section 6(b) (1) establishes a sensible procedure for eliminating this potential for abuse: Before publicly publishing any data which may adversely affect an identifiable labeler, the Commission must notify it of the damaging information, allow it a reasonable opportunity to supply the Commission with further information, and take reasonable steps to assure that the information is accurate and that public disclosure is "fair in the circumstances and reasonably related to effectuating the purposes" of the Act. Such considerations are relevant to disclosures initiated by the Commission but not to disclosures of material requested under the FOIA. And, if the Commission has erred by disclosing inaccurate or misleading information, it must "Publish a retraction" of that information "In a manner similar to that in which such disclosure was made." (Emphasis supplied). This language seems to envision agency-initiated publicity, via press release or otherwise, rather than a mere request for a document under the FOIA. Moreover, a Conference Committee report to a 1976 amendment to the Consumer Product Safety Act reinforces the Commission's position.[23] And the Commission's construction of the statute is that of an agency charged with administering it. While perhaps the last two factors do not have the controlling force the Commission seeks to ascribe to them, they are not make-weights. See Cass v. United States, 417 U.S. 72, 77-79, 94 S.Ct. 2167, 40 L.Ed.2d 668 (1974); Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).
 
 
 16
 The Commission's view is further supported by the inconsistency between section 6(b)(1) and the scheme of the FOIA. That Act calls for prompt disclosure of all nonexempt documents, notably short administrative deadlines[24] and unusually speedy court procedures; e. g., a case under the FOIA shall "take precedence" and be "expedited in every way."[25] In contrast, the procedures of section 6(b)(1) consume at least 30 days and probably a much longer period before "public disclosure" occurs. Moreover, if the Commission must take "reasonable steps to assure" the accuracy of all information in a record to be disclosed, this would require independent investigation of information received, as here, from another agency some eight years before.[26] Clearly, this would involve long delays inconsistent with the purpose of the FOIA. In addition, section 6(b)(1) obviously contemplates that, in an appropriate case, the Commission review and rewrite a document prior to its release to make it accurate. But under the FOIA, an agency does not rewrite a document or create informational material. It discloses existing documents, which it has already prepared. See NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 161-62, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); Nolen v. Rumsfeld, 535 F.2d 890, 891 (5th Cir. 1976), Cert. denied, 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 555 (1977).[27]
 
 
 17
 Section 6(a) of the Consumer Product Safety Act specifically incorporates the nine exemptions of the FOIA by reference, and repeats the flat prohibition on disclosing trade secrets and other confidential commercial material. We believe that in this statute affecting only commercial enterprises, Congress did not intend to reduce disclosure called for by the FOIA when a person requests documents, but to leave that situation unchanged. On this view, section 6(a) incorporates the FOIA exemptions with understandable emphasis, in this commercial setting, on absolute protection for trade secrets and similar information, and section 6(b)(1) provides a unique procedure to deal with the problem of unfairness which may occur when a government agency focuses adverse publicity on a particular business enterprise. See Gellhorn, Supra, 86 Harv.L.Rev. at 1431. Appellee argues that it is nevertheless unfair to send an inaccurate and commercially harmful document in response to an FOIA request, since the Commission cannot control the use to which it is thereafter put. But, as we have just pointed out, the FOIA does not provide for correction as distinguished from redaction of documents, possibly because, in contrast to publicity releases by the Commission, there is no government imprimatur on the document in that situation. Finally, this interpretation of section 6(b)(1) avoids a potential conflict between two statutes, See Morton v. Mancari, 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974), and carries out the intention of both. The Commission may assist consumers by generating in a public forum information regarding consumer products after using the procedures of section 6(b)(1) to insure accuracy, and it may also comply with the FOIA and make prompt disclosure of documents on request.[28]
 
 
 18
 We conclude, therefore, that the district court erred in its construction of the Consumer Product Safety Act and that the procedures of section 6(b)(1) do not apply when the Commission merely responds to a request under the FOIA. On this view, we need not resolve the argument between the parties over whether section 6(b)(1) meets the criteria of exemption three of the FOIA, which were tightened up after the Supreme Court's decision in Federal Aviation Administration v. Robertson, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975). See notes 10 and 20, Supra, and accompanying text.[29] Accordingly, we vacate the permanent injunction and remand with instructions to dismiss the complaint.
 
 
 
 [1]
 See, e. g., collection in H. Friendly, Federal Jurisdiction: A General View 22-27, 23 n. 45, 25 n. 53 (1973)
 
 
 [2]
 See 5 U.S.C. § 552(b)(4), (5), Quoted in note 10 Infra
 
 
 [3]
 For example, the Commission agreed to delete information concerning Pierce & Stevens' sales and earnings and confidential manufacturing processes
 
 
 [4]
 On this appeal, neither party appears to press the issues concerning trade secrets, confidential information or agency memoranda
 
 
 [5]
 On the Commission's appeal from the preliminary injunction, this court affirmed in April 1978, but specifically declined to rule on the merits of the principal legal issue now before us
 
 
 [6]
 Pub.L. 89-487, 80 Stat. 250; Pub.L. 90-23 § 4, 81 Stat. 54, 56
 
 
 [7]
 Act of June 11, 1946, Ch. 324, § 3, 60 Stat. 237, 238
 
 
 [8]
 Compare 5 U.S.C. § 552(a)(3) With Act of June 11, 1946, ch. 324, § 3(c), 60 Stat. 238. See, e. g., Robles v. EPA, 484 F.2d 843, 847 (4th Cir. 1973); Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1077 (1971)
 
 
 [9]
 5 U.S.C. § 552(a)(4)(B)
 
 
 [10]
 As originally enacted, the exemption section provided:
 (b) This section does not apply to matters that are
 (1) specifically required by Executive order to be kept secret in the interest of the national defense or foreign policy;
 (2) related solely to the internal personnel rules and practices of an agency;
 (3) specifically exempted from disclosure by statute;
 (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;
 (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;
 (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;
 (7) investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency;
 (8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or
 (9) geological and geophysical information and data, including maps, concerning wells.
 Later amendments have changed the language of some of these exemptions, particularly exemption (3), which is significant in this appeal. See text at note 29, Infra. See generally K. Davis, Administrative Law of the Seventies, §§ 3A.16, 3A.23 (1976); Project, Government Information and the Rights of Citizens, 73 Mich.L.Rev. 971, 1047-50, 1085-1101 (1975).
 
 
 [11]
 5 U.S.C. § 552(c)
 
 
 [12]
 5 U.S.C. § 552(a)(3), (a)(4)(A)
 
 
 [13]
 Act of Nov. 20, 1967, Pub.L. No. 90-146, 81 Stat. 466
 
 
 [14]
 Nat'l Comm'n on Product Safety, Final Report (1970)
 
 
 [15]
 Act of Oct. 27, 1972, Pub.L. No. 92-573, 86 Stat. 1207
 
 
 [16]
 For thorough analysis of the Consumer Product Safety Act and the powers of the Commission, See generally The Consumer Product Safety Commission: An Agency Manual, 43 Geo.Wash.L.Rev. 1077 (1975); Note, The Consumer Product Safety Act: A Federal Commitment to Product Safety, 48 St. John's L.Rev. 126 (1973)
 
 
 [17]
 15 U.S.C. § 2054(a)(1)
 
 
 [18]
 Appellee argues that Ms. Larson's letter asking for information was not a "request for records" which "reasonably describes such records" as required by 5 U.S.C. § 552(a)(3). The district court held that the Commission could construe Ms. Larson's letter as a request, and we agree. Congress' purpose in requiring a specific written request was protection of the agency from amorphous demands from which it is impossible to determine what is sought. See H.R.Rep. No. 876, 93d Cong., 2d Sess. 5-6 (1974); S.Rep. No. 854, 93d Cong., 2d Sess. 9-10 (1974), Reprinted in, U.S.Code Cong. & Admin.News 1974, p. 6267. The Senate Committee stated that "the identification standard in the FOIA should not be used to obstruct public access to agency records," S.Rep. No. 954, Supra, at 10. Thus we conclude that the district court was correct in its reasoning that a request need not be stated in any particular form, so long as the agency can reasonably determine what the requester desires. See generally Note, Supra, 74 Colum.L.Rev. at 904-06. In this case the Commission easily ascertained what documents pertained to Ms. Larson's inquiry, and we hold that the agency could construe her letter as a request for those documents
 
 
 [19]
 See also GTE Sylvania Inc. v. Consumer Product Safety Commission, 404 F.Supp. 352 (D.Del.1975), cited by the district court here, and 443 F.Supp. 1152 (D.Del.1977), app. pending, No. 78-1328 (3d Cir.); Cf. Nat'l Ornament & Electric Light Christmas Ass'n v. Consumer Product Safety Comm'n, 526 F.2d 1368, 1372 (2d Cir. 1975)
 
 
 [20]
 The reference is to 5 U.S.C. § 552(b)(3), which provides:
 This section does not apply to matters that are
 (3) specifically exempted from disclosure by statute (other than Section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matter to be withheld . . . .
 
 
 [21]
 15 U.S.C. § 2054(a)(1) provides, in relevant part, that the Clearinghouse
 collect, investigate, analyze, and Disseminate injury data, and information relating to the causes and prevention of death, injury, and illness associated with consumer products. (Emphasis added.)
 
 
 [22]
 See H.R.Rep. No. 1153, 92d Cong., 2d Sess. 32 (1972); Statement of Congressman Crane, 118 Cong.Rec. 31389 (Sept. 20, 1972)
 
 
 [23]
 In discussing an amendment to section 29 of the Act, 15 U.S.C. § 2078(e), the Report noted:
 The requirement that the Commission comply with section 6(b) prior to another Federal agency's public disclosure of information obtained under the Act is not intended by the conferees to supersede or conflict with the requirements of the Freedom of Information Act (5 U.S.C. § 552(a)(3) and (a)(6)). The former relates to public disclosure initiated by the Federal agency while the latter relates to disclosure initiated by a specific request from a member of the public under the Freedom of Information Act. (Emphasis supplied.)
 H.R.Rep. No. 1022, 94th Cong., 2d Sess. 27 (1976).
 Subsequent statements of legislative intent may not always be useful in inferring the intent of the Congress that enacted the legislation. See, e. g., United States v. Philadelphia Nat'l Bank, 374 U.S. 321, 348-49, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963). However, we think such legislative statements are entitled to weight where, as here, they are made in the context of amending a statute by members of Congress who were involved in the development of the original legislation. See, e. g., Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 380-81, 89 S.Ct. 1794, 23 L.Ed.2d 371; Mount Sinai Hospital v. Weinberger, 517 F.2d 329, 343 (5th Cir. 1975), Cert. denied, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976); Sioux Valley Empire Electrical Ass'n, Inc. v. Butz, 504 F.2d 168, 173, 176-77 (8th Cir. 1974); Bobsee Corp. v. United States, 411 F.2d 231, 237 n. 18 (5th Cir. 1969).
 
 
 [24]
 This was the statutory language of the FOIA when the Consumer Product Safety Act was enacted. Pub.L. No. 90-23, 81 Stat. 54 (1967). In 1974, the FOIA was amended to require the agency to determine within 10 working days whether to comply with a request for records, 5 U.S.C. § 552(a)(6)(A)(i), and to make prompt disclosure thereafter, 5 U.S.C. § 552(a)(6)(C). See also 5 U.S.C. § 552(a)(6)(A)(ii) (determination of administrative appeal within 20 days)
 
 
 [25]
 5 U.S.C. § 552(a)(4)(D); See also 5 U.S.C. § 552(a)(4)(C)
 
 
 [26]
 The reports were prepared by personnel of the Food & Drug Administration before the Commission was created
 
 
 [27]
 Appellee points out that in Rose v. Dept. of Air Force, 495 F.2d 261, 268 (2d Cir. 1974), aff'd, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), we directed the agency to cooperate with the district court in redacting the documents there involved before release under the FOIA. But redaction is not rewriting
 
 
 [28]
 While we do not suggest that the Commission's offer to include with the disclosed records a statement by Pierce & Stevens regarding alleged inaccuracies in the documents was required by law, this procedure is a sensible and fair accommodation of the manufacturers' and labelers' interests and we encourage the Commission to continue the practice
 
 
 [29]
 Appellee also argues that any disclosure should be limited to those portions of the documents relating to the product used by Ms. Larson, and that references to thirty other Pierce & Stevens' products should be deleted. This argument was made in the district court and apparently Judge Elfvin rejected it at the same time he ruled that the Commission could construe Ms. Larson's letter as an FOIA request, See note 18 Supra. In any event, it is clear that, under our holding today, Ms. Larson could demand disclosure of the entire documents, including those portions unrelated to the product that allegedly injured her. Accordingly, we decline to disturb this ruling of the district court