**Jerrold NADLER; Tribeca Community Association; 67 Vestry Street Tenants Association, Plaintiffs–Appellants,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant–Appellee.**

**No. 1420, Docket 95–6394.**

United States Court of Appeals, Second Circuit.

Argued April 25, 1996.

Decided Aug. 9, 1996.

Jeffrey D. Buss, New York City (Smith, Buss & Jacobs, New York City, of counsel), for Plaintiffs–Appellants.

Jaclyn C. Taner, Counsel, Federal Deposit Insurance Corporation, Washington, D.C. (Ann S. Duross, Assistant General Counsel, Colleen B. Bombardier, Senior Counsel, Charlotte A. Reid, Senior Attorney, Federal Deposit Insurance Corporation, Washington, D.C., of counsel), for Defendant–Appellee.

Before LUMBARD, VAN GRAAFEILAND and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiffs-appellants Jerrold Nadler, the Tribeca Community Association, and 67 Vestry Street Tenants Association (collectively "Plaintiffs") appeal from a judgment entered October 4, 1995 in the United States District Court for the Southern District of New York, Michael B. Mukasey, *Judge,* that granted summary judgment dismissing their complaint. The complaint sought declaratory relief and an injunction compelling defendant-appellee the Federal Deposit Insurance Corporation (the "FDIC") to disclose redacted portions of a joint venture agreement pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (the "FOIA"). The FDIC successfully resisted this disclosure in reliance upon section 552(b)(4), which exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential."

Affirmed.

## Background

The American Savings Bank (the "Bank") was a bank located in White Plains, New York. On or about May 2, 1990, the Bank incorporated Amore Holdings, Inc. ("Amore"), a wholly owned subsidiary. Amore acquired a parcel of land in the Tribeca neighborhood of Manhattan, and on November 25, 1991, entered into a joint venture agreement (the "Agreement") with Brewran

West Associates, L.P. ("Brewran"), the owner of an adjacent parcel of land. The Agreement committed Amore and Brewran to joint development of the two parcels (the "Site").

In June 1992, the Bank failed and the FDIC was appointed receiver for the Bank. Amore, however, is not in receivership and continues to perform under the Agreement.

Tribeca Community Association and 67 Vestry Street Tenants Association are organizations whose members reside in the neighborhood that encompasses the Site. Nadler is a member of the United States House of Representatives whose constituency includes these Tribeca residents. In late 1993, Plaintiffs learned from records held by the City of New York that Amore and Brewran were planning to construct a twenty-one story hotel on the Site. Pursuant to the FOIA, Plaintiffs, who oppose the construction of the proposed hotel, submitted to the FDIC three requests for disclosure of various documents, including the Agreement.

On March 24, 1994, the FDIC granted Plaintiffs' requests in part and released a copy of the Agreement with certain provisions redacted (the "Redactions"). The FDIC claimed that the Redactions were not subject to FOIA disclosure because they fell under the section 552(b)(4) exemption ("Exemption Four"). A vice president of Amore has stated in an affidavit that the Redactions

consist[ ] of detailed commercial and financial terms and conditions of the rights and obligations running between [Amore] and [Brewran], as set forth in the joint venture agreement. The information withheld, without limitation, is as follows: descriptions of the elements of the joint venture's plan to develop the subject property ...; statements of ownership percentages for various aspects of the commercial venture as agreed to between the joint venture partners ...; budgets and cost estimates ...; terms of agreements for cost-sharing or the payment of expenses ...; estimated values ...; [and] options provisions and terms governing the parties [sic] rights to elect other courses of action for project development....

In April and May 1994, Plaintiffs petitioned for administrative review of the decision pursuant to 5 U.S.C. § 552(a)(6)(A). The FDIC denied these petitions on May 12 and May 25, 1994. Plaintiffs then initiated the present action in the district court.

Both parties moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. On September 29, 1995, the district court issued an opinion and order granting the FDIC's motion for summary judgment and dismissing Plaintiffs' complaint. *See Nadler v. Federal Deposit Ins. Corp.*, 899 F.Supp. 158, 164 (S.D.N.Y.1995).

This appeal followed.

### Discussion

Exemption Four applies if a tripartite test is satisfied: (1) The information for which exemption is sought must be a "trade secret[ ]" or "commercial or financial" in character, § 552(b)(4); (2) it must be "obtained from a person," *id.;* and (3) it must be "privileged or confidential," *id. See GC Micro Corp. v. Defense Logistics Agency*, 33 F.3d 1109, 1112 (9th Cir.1994).

In the present case, there is no dispute that the first two elements of the test are satisfied. Plaintiffs do not contest the commercial or financial nature of the information contained in the Redactions, and the information was obtained from Amore, which is a person within the meaning of 5 U.S.C. § 551(2) (defining "person" to include "an individual, partnership, corporation, association, or public or private organization other than an agency"). The application of the third prong of the Exemption Four test, i.e., the status of the information as "privileged or confidential," is the subject of this appeal.

This Circuit uses a two-part test originally formulated by the District of Columbia Circuit to decide whether information is "privileged or confidential" for purposes of section 552(b)(4). *See Continental Stock Transfer & Trust Co. v. SEC*, 566 F.2d 373, 375 (2d Cir.1977) (per curiam); *Charles River Park "A", Inc. v. Department of Hous. & Urban Dev.*, 519 F.2d 935, 940 (D.C.Cir. 1975); *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C.Cir. 1974); *see also American Airlines v. Na-*

*tional Mediation Bd.,* 588 F.2d 863, 871 (2d Cir.1978). Under this test, "information to be confidential must have the effect either (1) of impairing the government's ability to obtain information—necessary information—in the future, or (2) of causing substantial harm to the competitive position of the person from whom the information was obtained." *Continental Stock,* 566 F.2d at 375.[1]

The district court ruled for the FDIC on both prongs of the *Continental Stock* test. With respect to the first, the district court noted that there is no bar to the FDIC's obtaining information in possession of an entity which it has succeeded as receiver, *see* 899 F.Supp. at 161, but relied upon a footnote in *National Parks* that left open the possibility that "other governmental interests" than preservation of the government's ability to acquire needed information, including "program effectiveness," might suffice to satisfy that test, *see id.* at 161–63; *National Parks,* 498 F.2d at 770 n. 17.[2] The district court concluded that "the peril to the FDIC's mission . . . as receiver is sufficiently compelling to merit use of the exemption." *Nadler,* 899 F.Supp. at 162.

As to the second prong, the district court held that disclosure would harm "the person from whom the information was obtained" because that person is the FDIC itself, which succeeded to the rights of the Bank in its capacity as receiver for the Bank. *See id.* at 163. Because we agree with the district court's analysis as to this second prong, we do not reach the issue whether the district court properly afforded relief to the FDIC on the basis of the "program effectiveness" exemption derived from footnote seventeen of *National Parks.*

■ Plaintiffs contend on appeal that any injury suffered by the FDIC due to release of the Redactions would not be "competitive in nature, but political." Thus, Plaintiffs do not challenge the district court's finding that the joint venture would be harmed by disclosure of the Redactions, but rather argue that such injury would be of a type not protected by Exemption Four. They argue that failure to disclose the Redactions stifles public debate about the proposed hotel construction, rather than protecting the project from harm by keeping information from competitors.

In developing the two-pronged Exemption Four test, the District of Columbia Circuit explained that its rationale was to "(1) encourag[e] cooperation by those who are not obliged to provide information to the government and (2) protect[ ] the rights of those who must." *National Parks,* 498 F.2d at 769. That court concluded from an analysis of Exemption Four's legislative history that Congress intended to exclude the release of material " 'which would customarily not be released to the public by the person from whom it was obtained,' " *id.* at 766 (quoting S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965)), so long as nondisclosure "is justified by the legislative purpose which underlies the exemption," *id.* at 767. With

---

1. As the district court recognized, *see Nadler,* 899 F.Supp. at 160–61, the standard in the District of Columbia Circuit for satisfaction of Exemption Four was revised in *Critical Mass Energy Project v. Nuclear Regulatory Comm'n,* 975 F.2d 871 (D.C.Cir.1992) (in banc), *cert. denied,* 507 U.S. 984, 113 S.Ct. 1579, 123 L.Ed.2d 147 (1993). The *Charles River/National Parks* interpretation of Exemption Four is now "confine[d] to information that persons are required to provide to the Government," *id.* at 872, and broadened in the case of "information . . . given to the government voluntarily" to encompass data "of a kind that the provider would not customarily make available to the public," *id.* We agree with the district court, *see* 899 F.Supp. at 161, that the records acquired by the FDIC from the Bank in receivership were not provided by the Bank voluntarily, and accordingly that the *Critical Mass* amendment of the *Charles River/National Parks*

test is irrelevant to the issue presented on this appeal.

2. We note that while this court adopted the *National Parks* formulation of Exemption Four in *Continental Stock,* our adoption did not encompass the speculation regarding "program effectiveness" in footnote 17 of *National Parks.* Compare *Continental Stock,* 566 F.2d at 375, *with National Parks,* 498 F.2d at 770 & n. 17. The Court of Appeals for the District of Columbia has since substantially adopted the view expressed as a possibility in footnote 17. *See Washington Post Co. v. U.S. Dep't of Health & Human Servs.,* 865 F.2d 320, 327 (D.C.Cir.1989) ("In *Critical Mass Energy Project v. NRC,* 830 F.2d 278 [,286] (D.C.Cir.1987), we subsequently found that other [governmental] interests may indeed be considered under exemption 4.").

respect to compelled disclosure of information, the legislative policy underlying the exemption centered upon the unfairness of disclosing financially sensitive information that was confidentially disclosed to the government. *See id.* at 767–70 (discussing legislative history).

Plaintiffs do not challenge the FDIC's finding that "the likely commercial disadvantage resulting from release of the withheld information could well cause a reduction in the amount realizable for the receivership from Amore and its holdings." The fact that this harm would result from active hindrance by the Plaintiffs rather than directly by potential competitors does not affect the fairness considerations that underlie Exemption Four. Sensitive financial information about a project of this nature clearly falls within the class of materials that Congress exempted as "confidential" in section 552(b)(4).

Moreover, as noted above, Plaintiffs do not dispute the fact that two of the three Exemption Four elements are satisfied. One of these admittedly satisfied elements is that the information is "commercial or financial" in character. § 552(b)(4). Thus, Plaintiffs concede that the redacted information is commercial or financial in nature, yet argue that any harm due to disclosure would be of a "political," rather than competitive, nature. The fact is that release might hinder the commercial success of the development project entered into by nongovernmental parties, with the FDIC participating only as receiver for a failed party. This potential harm is not properly characterized as "political."

Finally, in view of our conclusion that Exemption Four authorizes the FDIC to withhold disclosure of the Redactions, we need not consider the FDIC's contention that the Trade Secrets Act, 18 U.S.C. § 1905, provides alternative authority for nondisclosure.

## Conclusion

The judgment of the district court is affirmed.