**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2005

(Argued June 22, 2006        Decided September 11, 2006)
                               Errata Filed: November 16, 2006)
Docket Nos. 05-6162-cv(L)& 05-6628-cv(XAP)

-----------------------------------------------------------

Inner City Press/Community on the Move,

Plaintiff-Appellant, Cross-Appellee,

v.

Board of Governors of the Federal Reserve System,

Defendant-Appellee, Cross-Appellant.

-----------------------------------------------------------

Before: MINER and CALABRESI, Circuit Judges, and RESTANI,[*] Judge.

Plaintiff-Appellant appeals from a judgment of the United States District Court for the Southern District of New York (Denise Cote, Judge) granting summary judgment in part in favor of Defendant, the court having denied Plaintiff's request for information under the Freedom of Information Act. Defendant-Appellee cross appeals the district court's finding that Plaintiff met its burden of production showing that the information at issue was in the public domain.

Affirmed in part, remanded in part.

                                JILLIAN M. CUTLER (David C. Vladeck, on the brief), Georgetown

---

[*] The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

University Law Center, Washington, D.C., for Plaintiff-Appellant-Cross-Appellee.
YVONNE F. MIZUSAWA (Richard M. Ashton & Katherine H. Wheatley, on the brief), Board of Governors of the Federal Reserve System, Washington, D.C., for Defendants-Appellee-Cross-Appellant.

**Restani, Judge**:

This appeal concerns a request to the Board of Governors of the Federal Reserve System ("Board") under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552–552b (2000 & West Supp. 2006), for information contained in a bank merger application by Wachovia Corporation ("Wachovia") and SouthTrust Corporation ("SouthTrust"). Inner City Press/Community on the Move ("ICP") appeals from a judgment of the District Court for the Southern District of New York finding that the names of Wachovia's subprime-lending clients listed in an exhibit to the merger application qualified as confidential commercial information which is not subject to disclosure under Exemption 4 to FOIA, 5 U.S.C. § 552(b)(4).[1] The Board cross-appeals from the judgment that the public domain exception to Exemption 4 applies to part of the withheld information. The Board argues that ICP did not meet its burden of production showing the likelihood that part of the

---

[1]ICP is a nonprofit organization engaged in advocacy on issues affecting low income consumers and communities. Among the issues of concern to ICP is subprime lending, lending at high interest rates to people with high credit risk. Appellant's Br. 5.

withheld information would be in the public domain so that the Board was required to do a limited search to verify that fact. We agree with the district court that Exemption 4 applies to the information sought, but we do not agree that ICP has met its burden of production so that it would be appropriate to place a search burden upon the Board.

## BACKGROUND

On July 9, 2004, Wachovia and SouthTrust submitted a merger application to the Board.[2] Prior to filing the application, Wachovia contacted the Board inquiring whether it should include information about its relationships with subprime lenders. The Board replied that such information is helpful if public commentators question an applicant's relationships with subprime lenders. Therefore, Wachovia included information about its relationships with subprime lenders and requested confidential treatment of the information. Among the materials included was an exhibit labeled "Confidential Exhibit 3: Discussion of Activities Relating to Sub-Prime Lending" ("Exhibit 3"). The Board describes the contents of Exhibit 3 as follows:

> (i) the names of nine of Wachovia's commercial customers that make and/or purchase subprime residential mortgage loans; (ii) the specific amounts and some terms of Wachovia's credit facilities to these customers; (iii) descriptions of other banking services Wachovia provides

[2]The Bank Holding Company Act ("BHCA") requires the Board to approve bank mergers and certain ownership transactions prior to their occurrence. 12 U.S.C. § 1842(a) (2000).

3

to, or other relationships with, these customers; (iv) financial data on Wachovia's exposure and loan outstandings to commercial customers who engage in subprime lending; and (v) details regarding the due diligence Wachovia performs in evaluating particular lenders' requests for credit facilities.

Inner City Press/Cmty. on the Move v. Bd. of Governors of the Fed. Reserve Sys., 380 F. Supp. 2d 211, 214 (S.D.N.Y. 2005).

On July 19, 2004, ICP submitted a FOIA request to the Board seeking release of the merger application and related documents. In response, the Board released parts of the application but withheld certain documents, including Exhibit 3, explaining that the withheld materials were not subject to disclosure under Exemption 4 to FOIA because they contained "commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). ICP sent a letter to the Board appealing its decision and the Board denied the request on the same grounds.

On October 21, 2004, ICP filed suit in district court seeking release of only Exhibit 3. The parties filed cross-motions for summary judgment. The district court found that the information contained in categories (i), (ii), and (iii) of Exhibit 3, as indicated above, was "commercial or financial information obtained from a person and privileged or confidential" for purposes of Exemption 4.[3] Inner City Press, 380 F. Supp. 2d at 215, 218.

---

[3]The court also held that Exemption 4 did not apply to categories (iv) and (v). The parties do not challenge this ruling.

4

The district court also acknowledged that Exemption 4 did not apply to information that was already in the public domain.  Id. at 221. The court found that ICP had met its burden of production showing that specific information in the public domain appears to duplicate that being withheld.  The district court concluded that ICP had met its burden by: (1) showing that Exhibit 3 contained information that Wachovia acted as a market maker or underwriter to some of its subprime-lending clients who issued securities for public sale; and (2) pointing to registration forms containing similar information filed with the Securities and Exchange Commission ("SEC") by companies that issue securities for public sale.  Id.  The district court then required the Board to conduct a limited search of SEC filings for the subprime lenders listed in Exhibit 3 to verify if information was in the public domain that Wachovia was an underwriter for, and provided credit, funding or other financial services to any of the lenders.  Id.  The court ruled that the Board must release the information to the extent that it was publicly available.  Id.

ICP limits its present appeal to the district court's decision pertaining to category (i), the names of Wachovia's customers that engage in subprime lending.[4]  ICP argues that

---

[4]While category (i) is the principal target of ICP's appeal regarding information classified as confidential under Exemption 4, ICP also asks that we uphold the district court's order that the Board release any information that is already publicly available, even from the otherwise confidential information in categories (ii)

5

Exemption 4 does not apply to the names contained in Exhibit 3. The Board cross-appeals, arguing that ICP did not meet its burden of production. The Board also argues that the information that may be in the public domain is not subject to disclosure because it is not "freely available" under U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 764 (1989).

## DISCUSSION

We review FOIA exemption claims de novo. See A. Michael's Piano, Inc. v. Fed. Trade Comm'n, 18 F.3d 138, 143 (2d Cir. 1994).

FOIA was enacted in 1966 "to improve public access to information held by public agencies." Pierce & Stevens Chem. Corp. v. U.S. Consumer Prod. Safety Comm'n, 585 F.2d 1382, 1384 (2d Cir. 1978). "There is no doubt that the basic purpose of the FOIA is a general philosophy of full agency disclosure." Id. (citation and quotation omitted). The statute accomplishes this in several ways, providing that some types of agency information "must be published in the Federal Register; some must be made available for public inspection and copying; and other reasonably described records are obtainable on request to an agency." Id.

The statute also exempts nine categories of information from disclosure. 5 U.S.C. § 552(b)(1)–(9). Because of the policy

---

and (iii) containing the terms and amounts of their loans as well as descriptions of their other banking services with Wachovia.

6

favoring disclosure, however, the nine exemptions "do[] not authorize withholding of information or limit the availability of records to the public, except as specifically stated." Pierce, 585 F.2d at 1384 (citation and quotation marks omitted). Thus, the exemptions are "given a narrow compass." U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 151 (1989).

At issue here is Exemption 4. For Exemption 4 to apply, "(1) [t]he information . . . must be a 'trade secret' or 'commercial or financial' in character . . . ;(2) . . . must be 'obtained from a person,' . . . and (3) . . . must be 'privileged or confidential.'" Nadler v. FDIC, 92 F.3d 93, 95 (2d Cir. 1996) (quoting 5 U.S.C. § 552(b)(4)) (edits omitted). ICP does not contest that the information here, the names of the subprime lenders listed in Exhibit 3, is commercial or financial in nature and that it was obtained from Wachovia, a person within the meaning of FOIA. See 5 U.S.C. § 551(2) (defining a person as "an individual, partnership, corporation, association, or public or private organization other than an agency"). The issue is whether the information sought is "confidential."

To determine whether information is confidential for the purposes of Exemption 4, this Circuit has adopted a two-part test formulated by the District of Columbia Circuit in National Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974). See Nadler, 92 F.3d at 95; Cont'l Stock Transfer & Trust Co. v.

7

SEC, 566 F.2d 373, 375 (2d Cir. 1977) (per curiam).  The test states that information is confidential for the purposes of Exemption 4 if its disclosure would have the effect either: "(1) of impairing the government's ability to obtain information – necessary information – in the future, or (2) of causing substantial harm to the competitive position of the person from whom the information was obtained."  Cont'l Stock, 566 F.2d at 375 (adopting the National Parks test).

Although confidential commercial information is not subject to disclosure under Exemption 4, the exemption does not apply if identical information is otherwise in the public domain. Niagara Mohawk Power Corp. v. U.S. Dep't of Energy, 169 F.3d 16, 19 (D.C. Cir. 1999) (discussing Exemption 4); Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (discussing Exemption 3 and 7); Cont'l Stock, 566 F.2d at 375 (discussing Exemption 4). The rationale behind the public domain doctrine is clear: "if identical information is truly public, then enforcement of an exemption cannot fulfill its purposes."  Niagara, 169 F.3d at 19. The Supreme Court has limited the public domain exception to information that is "freely available."  Reporters Comm., 489 U.S. at 764.

While the government retains the burden of persuasion that information is not subject to disclosure under FOIA, "a party who asserts that material is publicly available carries the burden

8

of _production_ on that issue."[5]  _Davis_, 968 F.2d at 1279.  The burden of production is placed upon the party who asserts that material is publicly available because "[i]t is far more efficient, and obviously fairer."  _Occidental Petroleum Corp. v. SEC_, 873 F.2d 325, 342 (D.C. Cir. 1989).  To hold otherwise would require the opponent of disclosure to prove a negative, "that the information has nowhere been published."  _Id._  That is, the opponent of disclosure would have to "identify all of the public sources in which the information contained in its documents is not reproduced."  _Id._; _Niagara_, 169 F.3d at 19; _Davis_, 968 F.2d at 1279 ("[T]he task of proving the negative – that information has _not_ been revealed – might require the government to undertake an exhaustive, potentially limitless search.").

We first address the parties' arguments concerning the "impairment" prong of the _National Parks_ test, and then we address the parties' arguments concerning the public availability of part of the information sought.

## I.  Impairment of the government's ability to obtain information in the future

As the District of Columbia Circuit explained, disclosure

---

[5]Contrary to ICP's contentions, the allocation of burdens remains the same in Exemption 4 cases as in other public domain cases involving different FOIA exemptions.  _Niagara_, 169 F.3d at 19 (discussing Exemption 4 and stating that the burden of production rests upon the party favoring disclosure).  Likewise, the cases discussing the application of public domain doctrine to other FOIA exemptions are applicable here.  _Id._ (citing to other public domain cases and the exemptions discussed therein).

9

of confidential business information will impair the ability of the government to obtain information in the future because "[u]nless persons having necessary information can be assured that it will remain confidential, they may decline to cooperate with officials." Nat'l Parks, 498 F.2d at 767. Exemption 4 thus protects the government's ability to obtain information by "encouraging cooperation by those who are not obliged to provide information to the government." Id. at 769. If a person is compelled to submit information, however, "there is presumably no danger that public disclosure will impair the ability of the Government to obtain th[e] information in the future."[6] Id. at 770.

In the present case, the district court determined that the Board's ability to obtain information in the future would be impaired by the disclosure of the names of the subprime lenders listed in Exhibit 3. Key to the district court's determination was

_____

[6]The District of Columbia Circuit has revised the impairment prong of the National Parks test to further differentiate between voluntarily submitted information and information submitted mandatorily. Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 878–79 (D.C. Cir. 1992) (en banc). Under Critical Mass, information voluntarily provided to the government is not examined under the "impairment" or "substantial competitive harm" prong of the National Parks test but is to be withheld from disclosure under Exemption 4 if it "would customarily not be released to the public by the person from whom it was obtained." Id. at 879. In contrast, mandatory submissions are withheld from disclosure under Exemption 4 according to the traditional National Parks test. Id. at 872. We have not previously adopted the Critical Mass amendment to the National Parks test. Nadler, 92 F.3d at 96 n.1. The parties here do not argue for its adoption and the district court did not apply it in its decision. We decline to adopt nostra sponte the Critical Mass test.

10

its finding that Wachovia voluntarily submitted the names to the Board because the Board did not exercise any authority to compel the information. Because the district court found that Wachovia voluntarily rather than mandatorily submitted the names to the Board, the court did not find a presumption against impairment of the government's ability to obtain information.

In the main, ICP argues that Wachovia did not voluntarily submit the information sought because the mere legal authority to compel the production of information at issue[7] is sufficient for

_____

[7]The extent of the Board's authority to demand information from Wachovia is unclear. As previously stated, the BHCA provides the Board with authority to approve bank mergers and certain other ownership transactions. 12 U.S.C. § 1842. The Community Reinvestment Act ("CRA"), id. §§ 2901–2908, further directs the Board to "encourage [financial institutions] to help meet the credit needs of the local communities," id. § 2901(b), in part by "assess[ing] the institution's record of meeting the credit needs of its entire community, including low- and moderate-income neighborhoods, consistent with the safe and sound operation of such institution," id. § 2903(a)(1). Neither of these acts explicitly requires the Board to compel specific information such as client names from a financial institution.

Although the BHCA requires the Board to consider "the financial and managerial resources and future prospects of the company or companies and the banks concerned, and the convenience and needs of the community to be served," id. § 1842(c)(2), it does not require the Board to collect specific information such as client names from merger applicants. The CRA is a similarly "amorphous statute" that also does not set forth the specific types of information that the Board is to obtain. Lee v. Bd. of Governors of the Fed. Reserve Sys., 118 F.3d 905, 913 (2d Cir. 1997). We have stated previously that "[a]ny attempt to glean substance from the CRA is met with the reality that the statute sets no standards for the evaluation of a bank's contribution to the needs of its community." Id.

Hence, while the Board may request some information from

11

that submission of information to be deemed mandatory.  We reject

ICP's proposed standard.

Adoption of ICP's suggested standard would result in an

undesirable general presumption against impairment.[8]  As previously

---

Wachovia and similar institutions under the BHCA and the CRA, it is unclear whether the Board is permitted to compel specific information such as client lists.  We do not, however, resolve whether the Board may compel such information because we hold that the government must have actually exercised any such legal authority to compel information for the submission of such information to be considered mandatory under National Parks.

[8]We have not previously considered this precise issue.  The District of Columbia Circuit has held that the "actual legal authority" to request information governs the assessment of the character of submissions.  Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin., 244 F.3d 144, 149 (D.C. Cir. 2001).  While we agree with the holding in Auto Safety that submissions are deemed mandatory only if the agency has the actual legal authority to compel information, the holding does not resolve the issue before us because the court in Auto Safety did not consider whether legal authority, while necessary, is sufficient for a submission to be deemed mandatory.  Id.

Some district courts have considered this issue.  One court stated that "[i]n addition to possessing the authority to compel submission, the agency must also exercise that authority in order for a submission to be deemed mandatory."  Parker v. Bureau of Land Mgmt., 141 F. Supp. 2d 71, 78 n.6 (D.D.C. 2001).  The court also noted that "an agency may decline to require information that it has the authority to compel and instead pursue voluntary compliance."  Id.

In contrast, another district court stated that "where compelled cooperation will obtain precisely the same results as voluntary cooperation, an impairment claim cannot be countenanced."  Teich v. FDA, 751 F. Supp. 243, 251 (D.D.C. 1990).  The facts of Teich, however, distinguish it from the present case. First, it is unclear whether the information obtained in Teich was truly voluntarily submitted. Unlike the current case, in Teich, the FDA, pursuant to its informal powers, sent a letter requesting data from a silicone breast implant manufacturer.  Id. at 250.  The Board in this case did not make any requests for information but gave an

discussed, if a submission is deemed mandatory, then there is a presumption against impairment of government function. See Nat'l Parks, 498 F.2d at 770. If the vast majority of submissions are deemed mandatory, which would seem to be the effective result of ICP's suggested standard, then there would be an overwhelming presumption against impairment. This essentially undermines Exemption 4's goal of protecting the government's ability to obtain information. Although FOIA exemptions are construed narrowly, ICP offers little reason for adopting such a broad rule.

ICP's suggested standard also interferes with the government's discretion as to how to obtain information. By reducing the protection for confidential business information, the proposed standard deters holders of necessary information from voluntarily cooperating and complying with the government because, if they knew "that their information was subject to public disclosure, [they] would likely submit the bare minimum required." Inner City Press, 380 F. Supp. 2d at 217 n.5. ICP disputes this point, arguing that banks would not be deterred from disclosing the names of their subprime lenders because they have a strong incentive to provide the Board with all necessary information to ensure approval of their merger applications.

---

informational response to a telephone inquiry. Second, in Teich, the district court was admonishing the FDA for its failure to exercise authority to implement regulations to compel information and for thirteen years relying upon informal letters to seek information. Id. at 251. We do not have similar facts here.

13

ICP's own brief, however, indicates that banks have a competing interest deterring them from disclosing the names of their subprime-lending clients to the Board if they were to become public. ICP states that its investigations generate publicity about a financial institution's relationships with subprime lenders, Appellant's Br. 8, and that reputational harm may result from the disclosure of these relationships, id. at 11. ICP also states that the resulting negative publicity and reputational harm have caused some banks to discontinue business relations with subprime lenders. Id. Thus, it is apparent that banks, including Wachovia, have a financial interest in not releasing the names of their subprime-lending clients to the Board if such names are to become public. This deterrent would likely counteract the incentive to complete the merger application process quickly by providing full disclosure to the Board and would result in more restrained disclosures to the Board.[9]

Faced with a bank's reluctance to provide full disclosure, the Board would be forced to achieve its ends through assertion of its authority to compel information. Like the District of Columbia Circuit, we see no reason for interfering with

---

[9]Michael P. Rizer, Senior Vice President of Wachovia, illustrates the strength of this deterrent when he states that Wachovia "would not have provided the Board with the actual names of its sub-prime lending clients" if it believed that the information would later become publicly available. Rizer Decl. ¶ 10.

the government's discretion as to how to exercise its regulatory authority to collect necessary information. See Critical Mass, 975 F.2d at 880 ("We know of no provision in FOIA that obliges agencies to exercise their regulatory authority in a manner that will maximize the amount of information that will be made available to the public through that Act. Nor do we see any reason to interfere with the [agency's] exercise of its own discretion in determining how it can best secure the information it needs."). Accordingly, we hold that an agency must both possess and exercise the legal authority to obtain information for the resulting submission of information to be deemed "mandatory" under the National Parks test.

In the instant case, the Board did not exercise any authority to compel information from Wachovia about its relationships with subprime lenders. Such information is not requested in the merger application. Rather, the merger application requires applicants to provide information regarding: (1) the proposed transaction; (2) financial and managerial status of the applicant; and (3) the competition of the applicant and the convenience and needs of the community. J.A. 31–35. The application does not specifically request information about an applicant's relationships with subprime lenders nor does it request a list of an applicant's clients.

The Board also made no separate requests for information from Wachovia about its relationships with subprime lenders. The

15

Board instead received such information from Wachovia after Wachovia telephoned the Board and was told that the information was useful if commentators questioned the relationships. Rizer Decl. ¶ 3; Baer Decl. ¶ 8. The Board's response to the telephone inquiry appears to have been merely informative, alerting Wachovia about the preferred action in anticipation of questions regarding its relationships with subprime lenders. The district court correctly concluded that the Board's response to Wachovia was "too amorphous" to be considered a demand for the names of Wachovia's subprime-lending clients. Inner City Press, 380 F. Supp. 2d at 218. Therefore, we agree with the district court that the Board did not compel Wachovia to submit the names of its subprime-lending clients.

Accordingly, we affirm the district court's ruling that the requested information is confidential under the "impairment" prong of the National Parks test and that Exemption 4 to FOIA is applicable. Because the impairment prong of the National Parks test applies, we do not reach the "substantial competitive harm" prong of the test.

## II. Information in the public domain

As previously stated, the district court also ruled that the public domain exception to Exemption 4 applied to some of the information sought. The district court found that ICP satisfied its burden of production by pointing to publicly available SEC

16

forms that appeared to require part of the information being withheld in Exhibit 3. The court then required the Board to search the SEC filings to determine whether the information listed in Exhibit 3 was publicly available. Specifically, the district court ruled that:

> if the fact that Wachovia has provided credit facilities to any of the clients listed in Exhibit 3 has already been disclosed to the public in SEC filings, and Exhibit 3 itself indicates that underwriting services have been provided to one or more of the listed clients, such information in Exhibit 3 must likewise be disclosed to the extent it is already public.

Inner City Press, 380 F. Supp. 2d at 221 (footnote omitted).

The Board argues that the district court erred in its ruling because ICP did not meet its burden of production. The Board also argues that even if ICP were to meet its burden of production, disclosure would still be unwarranted under Reporters Committee, 489 U.S. at 764. We agree with the Board that ICP did not meet its burden of production but we do not agree that disclosure necessarily would be barred under Reporters Committee.

**A.   Burden of production**

To satisfy the burden of production, the requesting party "must . . . point[] to specific information in the public domain that appears to duplicate that being withheld." Afshar v. U.S. Dep't of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983); see also Cottone v. Reno, 193 F.3d 550, 555 (D.C. Cir. 1999) (holding that claimant met its burden of production by showing "the precise date

17

and time that the particular conversation was recorded and the unique identification number assigned to the tape"); Davis, 968 F.2d at 1280 (requiring the claimant show that there is a "permanent public record of the exact portions he wishes [to obtain]"). A requesting party can fulfill this burden by pointing to a regulation that requires the disclosure of the specific information sought. See Niagara, 169 F.3d at 19-20 (allowing a citation to a regulation requiring the filing of a public form to meet the burden of production but holding that the burden was not fulfilled because the information required by the regulatory form was projected data while the document requested contained actual data). Thus, one way – and the way relevant to the instant case – for ICP to meet its burden of production, would be for it to show that the information publicly available through a regulation appears to duplicate the information being withheld in Exhibit 3.

In this case, Exhibit 3 contains information that Wachovia "will act as a market maker or underwriter with respect to securities issued by some of [its] clients [listed in Exhibit 3]" and that Wachovia provided "credit or funding facilities or other financing relationships" to these clients.[10] Rizer Decl. ¶ 5. ICP

---

[10]Contrary to ICP's arguments, it must show that information is in the public domain that Wachovia provided credit, funding, or other financial services to its subprime-lending clients. First, the district court has held that such information is exempt from disclosure. Inner City Press, 380 F. Supp. 2d at 218. ICP does not contest this finding. Second, information about the provision of credit, funding, or other financial services is not segregable

claims that this information is publicly available in SEC filings because the lenders who offered securities for public sale were required to file registration statements with the SEC containing the withheld information. ICP, however, fails to meet its burden of production because the SEC forms which it cites disclose information that is different from the information withheld in Exhibit 3. In particular, we examine the information required to be disclosed by SEC Form S-1.[11]

Form S-1 is a registration form that a company files with

---

from information that Wachovia acted as a principal underwriter to its clients. Mr. Rizer's affidavit clearly states that Wachovia provided credit, funding or other financial services to each of its clients. Rizer Decl. ¶ 5. Thus, to know the names of Wachovia's subprime lending clients is to know that Wachovia provided them with credit, lending, or other financial services. Because information that is "inextricably intertwined" with exempt information cannot be disclosed, Willamette Indus., Inc. v. United States,689 F.2d 865, 867–68 (9th Cir. 1982) (quoting Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260–61 (D.C. Cir. 1977)), ICP must also show that there is likely information in the public domain that Wachovia provided credit, funding, or other financial services to its subprime-lending clients in order for the public domain exception to apply.

[11]SEC Form 424B5(b), also cited by ICP, does not require registrants to provide types of information different from that required by Form S-1. Form 424(b)(5) was promulgated pursuant to Rule 424, Regulation C of the Securities Act of 1933. Rule 424(b)(5), from which Form 424B5(b) stems, provides that a new prospectus must be filed with the SEC in certain circumstances. 17 C.F.R. § 230.424 (2006). In pertinent part, Form 424B5 requires the reporting only of a substantive change from, or addition to, the information contained in the last prospectus filed with the SEC or as part of the registration statement. 17 C.F.R. § 230.424(b)(5) (referring to 17 C.F.R. § 230.424(b)(3)).

the SEC when it issues securities in an initial public offering.[12] Preliminarily, we note that the parties do not dispute that Form S-1 will contain information on whether a registrant conducts subprime lending. Form S-1 requires registrants to describe their business pursuant to 17 C.F.R. § 229.101. See SEC Form S-1 at 4. Section 229.101 states that registrants must "[d]escribe the business done and intended to be done by the registant . . . focusing upon the registrant's dominant segment or each reportable segment about which financial information is presented in the financial statements." 17 C.F.R. § 229.101(c)(1). Thus, if a registrant engages in subprime lending, it would be reflected on Form S-1 pursuant to 17 C.F.R. § 229.101.

Form S-1 also requires registrants to "[f]urnish the information required by Item 508 of Regulation S-K ([17 C.F.R.] § 229.508 . . .)." SEC Form S-1 at 4. Section § 229.508(a) states that "[i]f the securities are to be offered through underwriters, name the principal underwriters." 17 C.F.R. § 229.508(a). Section 229.508(a) does not require the identity of all other underwriters.[13] Id.; see also SEC, Division of Corporate Finance,

---

[12] Form S-1 can be accessed at: www.sec.gov/about/forms/forms-1.pdf (last visited Sept. 6, 2006).

[13] The Securities Act of 1933 defines an underwriter as:

> any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such

Manual of Publicly Available Telephone Interpretations ¶ 62 (1997), at http://www.sec.gov/interps/telephone/cftelinterps_regs-k.pdf (last visited Sept. 6, 2006) ("Item 508(a) of Regulation S-K, which calls for disclosure of the identify of 'principal underwriters' and their material relationships with the registrant, does not require disclosure as to each member of the selling group, but is limited to those underwriters who are in privity of contract with the issuer with respect to the offering.").

Finally, § 229.508(a) also requires registrants to "[i]dentify each [principal] underwriter having a material relationship with the registrant and state the nature of the relationship." 17 C.F.R. § 229.508(a). A relationship is material if "there is 'a substantial likelihood that the disclosure of the omitted [information] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'" DeMaria v. Andersen, 318 F.3d 170,

---

undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking . . . .

15 U.S.C. § 77b(a)(11) (2000).

Not all underwriters, however, are "principal underwriters." Principal underwriters are typically the parties who "sign the firm-commitment underwriting agreement. These managers or principal underwriters in turn contact other broker-dealers to become members of the underwriting group . . . ." Billing v. Credit Suisse First Boston, Ltd., 426 F.3d 130, 138 n.4 (2d Cir. 2005) (citing 1 Thomas Lee Hazen, The Law of Securities Regulation § 2.1[2][B] (5th ed. 2005)).

180 (2d Cir. 2003) (quoting <u>TSC Indus., Inc. v. Northway, Inc.</u>, 426 U.S. 438, 449 (1976)).  In sum, SEC Form S-1 makes the following information publicly available: (1) the nature of a registrant's business including information about subprime lending businesses; (2) the identity of the registrant's principal underwriters; and (3) the nature of the material relationships between the registrant and its principal underwriters.

Here, the information publicly available through Form S-1 has not been shown to be likely duplicative of the information being withheld in Exhibit 3.  As discussed previously, Exhibit 3 contains the following information: (1) some of the subprime lenders listed in Exhibit 3 issued securities and thus filed a registration statement with the SEC; (2) Wachovia acted as a market maker or underwriter to some of its subprime-lending clients; and (3) Wachovia provided credit or funding facilities or other financing services to each of its subprime-lending clients.  Rizer Decl. ¶ 5.  Parts (2) and (3) of the withheld information do not appear to correspond with the information publicly available through Form S-1.

As to part (2), Form S-1 reveals the identity of a registrant's <u>principal</u> underwriters, not <u>general</u> underwriters.  ICP has not shown that Exhibit 3 contains information that Wachovia was a principal underwriter to some of its subprime-lending clients.

In regards to part (3), Form S-1 discloses the nature of

22

material relationships between a registrant and its principal underwriters. It does not specifically request general information about credit, funding, or other financial relationships. ICP has failed to address this issue directly. It has not argued that Wachovia's provision of credit, funding, or other financing services to its subprime-lending clients constitutes a material relationship, or that the provision of credit, loan, or other financial services in similar situations likely constitutes a material relationship. Having failed to address this issue directly and having failed to show that Wachovia acted as a principal underwriter to its subprime-lending clients, ICP has not met its burden of production.

Accordingly, we remand to the district court for ICP to have the opportunity to fulfill its burden of production. To fulfill its burden of production, ICP must demonstrate that the information sought from Exhibit 3 is likely duplicative of that in the SEC filings. To do that, in the context of this case, ICP must show that Wachovia was a principal underwriter to some of its subprime-lending clients. Additionally, ICP must address part (3) and show that the credit, funding, or financing relationships involved here are likely material relationships.

**B.   Reporters Committee**

The Board also argues that even if ICP meets its burden of production showing that the information sought is likely to be

in the public domain, the information is still not subject to disclosure under Reporters Committee. The Board argues that under Reporters Committee, if information in the public domain is not "freely available" because of the logistical difficulties in locating it, the information remains exempt from FOIA disclosure. Appellee's Br. 55. Because it is quite possible that on remand ICP will meet its burden of production, we consider the Board's argument in the interest of judicial economy. Having done so, we reject it.

In Reporters Committee, the Supreme Court discussed whether a rap sheet compiling a person's criminal history is subject to disclosure because the events summarized in the rap sheet have been previously disclosed to the public. 489 U.S. at 762–63. The Court stated that the issue was "whether the compilation of otherwise hard-to-obtain information alters the privacy interest implicated by disclosure of that information." Id. at 764. The Court noted that the individual records of criminal convictions and arrests were found at various locations throughout the country. Id. at 753. The Court then distinguished between the "scattered disclosure of the bits of information contained in a rap sheet and revelation of the rap sheet as a whole." Id. at 764. The Court emphasized that "there is a vast difference between the public records that might be found after a diligent search of courthouse files, county archives, and local

24

police stations throughout the country and a computerized summary located in a single clearinghouse of information." Id. Hence, the Court held that a rap sheet is not "freely available" and is not subject to disclosure. Id.

The publicly available information in this case, the SEC filings, differs from the criminal records in Reporters Committee. Rather than dealing with various government entities such as courthouses, county record departments, and local police stations, a member of the public seeking securities filings need contact only one government agency, the SEC. A person seeking securities filings also does not need to traverse the entire nation seeking records but can access the filings on-line free of charge via the SEC's Electronic Data Gathering and Retrieval system ("EDGAR").[14] Searches through SEC filings on EDGAR can be done in a number of ways, such as by using an issuer's name or filing number. If the name of the registrant is not known to the searcher, as in ICP's situation, a search through the text of the SEC filings can be done. EDGAR currently allows text searches through SEC filings submitted during the past two years. Despite this current two-year limitation, the information in this case remains much more "freely available" than in Reporters Committee.[15]

_____

[14]EDGAR can be accessed at http://www.sec.gov/edgar.shtml (last visited Sept. 6, 2006).

[15]As technology quickly changes, information becomes more readily available to the public and the difficulties noted in

Securities filings also do not have the same privacy concerns as criminal records. While government agencies assemble rap sheets for their own use and limit their disclosure due to privacy concerns, see id. at 764-65, the SEC collects securities filings and makes them available to the public. Moreover, the goal of securities filings themselves is to protect investors by requiring full disclosure of material information. Pinter v. Dahl, 486 U.S. 622, 638 n.14 (1988). Therefore, the ready availability of securities filings and the policy favoring disclosure of information found in securities filings distinguishes this case from Reporters Committee.

Accordingly, assuming that ICP can meet its burden of production, we hold that it is not inconsistent with Reporters Committee to require the Board to search the SEC filings for the lenders listed in Exhibit 3 to determine whether information is in the public domain showing that Wachovia acted as a principal underwriter and provided credit, funding or other financial services to the lenders, and to release such information to the extent that it is already public.[16]

Reporters Committee, for example, lessen significantly. The rapid change in technology is evidenced here by the fact that a text search of securities filings became available during the pendency of this matter. Appellee's Br. 58 n.21.

[16]In the circumstances of this case, the Board's search would involve only a limited number of client names in one database. It remains possible that a more difficult search involving a very large number of names or widely scattered names would alter the

**CONCLUSION**

For the foregoing reasons, we conclude that Exemption 4 applies unless the withheld information is in the public domain. We also hold that ICP did not fulfill its burden of production showing that the withheld information is likely in the public domain sufficiently to place a limited search burden upon the Board. Accordingly, we AFFIRM the judgment of the district court in so far as it ruled with respect to the applicability of Exemption 4 but REMAND for the district court to afford ICP the opportunity to fulfill its burden of production of showing that Wachovia functions as a principal underwriter to its subprime lenders and that the credit, funding, or other financial relationships involved here are likely material relationships.

---

concerns here. Because that is not the case before us, we take no stand on such a situation.