09-4083-cv; 09-4097-cv
Bloomberg L.P. v. Board of Governors of the Federal Reserve System

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2009

(Argued: January 11, 2010      Decided: March 19, 2010)

Docket No. 09-4083-cv; No. 09-4097-cv (CON)

- - - - - - - - - - - - - - - - - - - -x

BLOOMBERG, L.P.,

Plaintiff-Appellee,

- v.-

BOARD OF GOVERNORS OF THE FEDERAL
RESERVE SYSTEM,

Defendant-Appellant,

and

THE CLEARING HOUSE ASSOCIATION L.L.C.,

Intervenor-Appellant.

- - - - - - - - - - - - - - - - - - - -x

Before:      JACOBS, Chief Judge, LEVAL and HALL,
             Circuit Judges.

Defendant Board of Governors of the Federal Reserve

System appeals from a judgment entered August 24, 2009 in

favor of plaintiff Bloomberg, L.P., by the United States

District Court for the Southern District of New York

(Preska, Ch.J.) compelling disclosure under the Freedom of Information Act of information about loans made by the Federal Reserve Banks.  We affirm, holding that the information sought does not fall within the Act's Exemption 4.

THOMAS H. GOLDEN, Willkie Farr & Gallagher LLP, New York, NY; (Charles J. Glasser, Jr., Global Media Counsel, Bloomberg News, New York on the brief), NY for Plaintiff-Appellee.

MATTHEW M. COLLETTE (Tony West, Mark B. Stern on the brief), Department of Justice, Washington, D.C.; YVONNE F. MIZUSAWA (Richard M. Ashton, Katherine H. Wheatley on the brief), Board of Governors of the Federal Reserve System, Washington, D.C., for Defendant-Appellant.

ROBERT J. GIUFFRA, JR. (H. Rodgin Cohen, Michael M. Wiseman, William J. Snipes, Patrice A. Rouse, Erez J. Davy on the brief), Sullivan & Cromwell LLP, New York, NY, for Intervenor-Appellant.

Melanie Sloan, Anne L. Weismann, Citizens for Responsibility and Ethics in Washington, Washington, D.C., for Amicus Curiae Citizens for Responsibility and Ethics in

Washington in support of Plaintiff-Appellee.

David A. Schulz, Alia L. Smith, Levine Sullivan Koch & Schultz, LLP, New York, NY for Amici Curiae Advanced Publications, Inc., American Society of News Editors, Dow Jones & Company, Inc., Gannett Company, Inc., Hearst Corporation, Magazine Publishers of America, Inc., National Newspaper Association, Reports Committee for Freedom of the Press, Reuters America LLC, The Association of Alternative Newsweeklies, The Associated Press, The National Conference of Editorial Writers, and the New York Times Co. ("Press Amici") in support of Plaintiff-Appellee.

Cory L. Andrews, Daniel J. Popeo, Washington Legal Foundation, Washington, D.C., for Amici Curiae Washington Legal Foundation and Allied Educational Foundation in support of Plaintiff-Appellee.

C. Dawn Causey, Gregory Taylor, American Bankers Association, Washington, D.C., for Amicus Curie American Bankers Association in support of Defendant-Appellant and Intervenor-Appellant.

DENNIS JACOBS, Chief Judge:

The Federal Reserve System--the central bank of the

United States--is composed of twelve regional Federal Reserve Banks and the defendant-appellant Board of Governors of the Federal Reserve System ("Board"), in Washington, D.C. The Board is a federal agency that (among other things) supervises the operations of the twelve Federal Reserve Banks.

Plaintiff Bloomberg, L.P., a news organization, submitted Freedom of Information Act ("FOIA") requests to the Board in April and May 2008. The requests sought (in relevant part) detail about loans that the twelve Federal Reserve Banks made to private banks in April and May 2008 at the Discount Window and pursuant to ad hoc emergency lending programs (described in the margin[1]). Bloomberg asked, loan

[1] Bloomberg sought information about loans conducted at the Discount Window, the Primary Dealer Credit Facility ("PDCF"), the Term Securities Lending Facility ("TSLF"), and the Term Auction Facility ("TAF"). The Discount Window is the long-standing program through which the twelve Federal Reserve Banks make short-term loans (often overnight) to depository institutions, and it can serve as "an emergency, back-up source of liquidity" for borrowing depository institutions that lack other options. Decl. of Brian F. Madigan ¶ 18. In the financial crisis of 2007, the Board authorized the Federal Reserve Banks to implement the TAF, a form of Discount Window lending that provides longer-term loans to depository institutions in amounts and at rates set by auction. In response to the continuing financial crisis, in 2008 the Board authorized the Federal Reserve Bank of New York to lend to primary dealers (certain banks and broker dealers) through the PDCF and TSLF. The PDCF expands Discount Window-style lending to primary dealers. The TSLF

4

by loan, for the name of the borrowing bank, the amount of the loan, the origination and maturity dates, and the collateral given.

The Board denied these requests (in relevant part) in December 2008. The Board conceded possession of records showing the loan information Bloomberg sought, with the exception of the collateral; collateral information is held by the lending Federal Reserve Banks. But the Board advised that the responsive information in its possession--contained in "Remaining Term Reports"--was exempt from disclosure under FOIA Exemptions 4 and 5. The Board did not search the lending records of the twelve Federal Reserve Banks, explaining that a request to the Board does not constitute a request for information held by those institutions.

Bloomberg brought this action in November 2008 (before receiving the formal denial of both its requests) in the United States District Court for the Southern District of New York (Preska, Ch.J.) to compel disclosure of the responsive documents and to compel the Board to conduct a search of the records held at the Federal Reserve Bank of

permits primary dealers to obtain Treasury Securities in exchange for a pledge of other types of securities; this is implemented through an auction administered by the Federal Reserve Bank of New York.

New York (which had granted many of the largest loans in the relevant period). Following cross-motions for summary judgment, the district court ruled that the Remaining Term Reports were not exempt from FOIA disclosure under FOIA Exemption 4 or 5, and that certain Federal Reserve Bank records must be searched to respond adequately to the FOIA request. See Bloomberg L.P. v. Bd. of Governors of the Fed. Reserve Sys., 649 F. Supp. 2d 262 (S.D.N.Y. 2009). After judgment was entered, the Clearing House Association (a group of banks) was granted leave to intervene as a defendant. The judgment was stayed pending this appeal. As the records of the Federal Reserve Bank of New York had not been searched, we need not decide here whether what may be found must be produced.

The Board and the Clearing House appeal only on the ground that a proper interpretation of FOIA Exemption 4 covers the requested material. No contest is made as to Exemption 5, or as to the scope of the Board's (disputed) obligation to conduct a search of records at the Federal Reserve Bank of New York. Any argument that the Board had as to Exemption 5, or either side had as to the scope of the ordered search at the Federal Reserve Bank of New York is

therefore deemed waived. Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998). Whether certain records of the twelve Federal Reserve Banks are records of the Board is an issue that is decided in an opinion--filed simultaneously with this opinion--in the appeal (heard in tandem with this appeal) from the Southern District's decision in Fox News Network, LLC v. Board of Governors of the Fed. Reserve Sys., 639 F. Supp. 2d 384 (S.D.N.Y. 2009). See Fox News Network, LLC v. Bd. of Governors of the Fed. Reserve Sys, ____ F.3d ____, No. 09-3795 (2d Cir. March 19, 2010).

The only question decided in this opinion is whether the Board may withhold the responsive Remaining Term Reports under Exemption 4, which allows a federal agency (in this case, the Board) to refuse disclosure of "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). "Exemption Four applies if a tripartite test is satisfied: (1) The information for which exemption is sought must be a trade secret or commercial or financial in character; (2) it must be *obtained from a person*; and (3) it must be privileged or confidential." Nadler v. FDIC, 92 F.3d 93, 95 (2d Cir. 1996) (emphasis added) (internal citations,

alterations, and quotation marks omitted).  Bloomberg concedes that the information is financial in character: That is why it wants it.  The parties dispute whether the second and third parts are satisfied.

We hold that the information at issue--the identity of the borrowing bank, the dollar amount of the loans, the loan origination and maturity dates, and the collateral securing the loan--was not "obtained from" the borrowing banks within the meaning of FOIA Exemption 4.  We therefore do not reach the question whether such information is "privileged or confidential" as to the borrowing banks.

The Board's alternative argument is that the Board obtained information from the Federal Reserve Banks, and that the Federal Reserve Banks are "persons."  Putting aside a fair question as to whether the Federal Reserve Banks are "persons" or agencies, we conclude that disclosure of the contested records would not cause the Federal Reserve Banks to suffer the kind of harm contemplated by the "privileged or confidential" requirement of Exemption 4.

**I**

The "basic purpose [of FOIA] reflected a general

8

philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." Dep't of the Air Force v. Rose, 425 U.S. 352, 360-361 (1976) (internal quotation marks omitted).

To implement this presumption for disclosure, FOIA exemptions "have been consistently given a narrow compass." U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 151 (1989); see also Inner City Press/Cmty. on the Move v. Bd. of Governors of the Fed. Reserve Sys., 463 F.3d 239, 244 (2d Cir. 2006). "[A]ll doubts [are] resolved in favor of disclosure." Local 3, Int'l Bhd. of Elec. Workers v. NLRB, 845 F.2d 1177, 1180 (2d Cir. 1988). And "the burden [is] on the agency to justify the withholding of any requested documents." U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991). The agency's decision that the information is exempt from disclosure receives no deference; accordingly, the district court decides *de novo* whether the agency has sustained its burden. 5 U.S.C. § 552(a)(4)(B); U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989). Appellate review is likewise *de novo*. Halpern v. FBI, 181 F.3d 279, 288 (2d Cir. 1999).

The Board advances two distinct arguments to support

the proposition that the disputed information was "obtained from a person" under Exemption 4: (1) the loan information contained in the Remaining Term Reports was "obtained" from the borrowing banks because the amount, terms, and conditions of each loan to each borrower was in effect determined by the loan request itself; and (2) the Federal Reserve Banks that made the loans and passed the information on to the Board are "person[s]" from which the Board "obtained" the information.

**II**

Was the information in the Remaining Term Reports "obtained from a person?" FOIA defines a "person" as including "an individual, partnership, corporation, association, or public or private organization other than an agency." 5 U.S.C. § 551(2). It is uncontested that the borrowing banks are persons under this definition.

A completed loan application will ordinarily contain considerable information, and when it is submitted to a lender, the lender has "obtained" that information from the applicant. But Bloomberg's FOIA request does not seek loan applications; it seeks documents that show what loans the

10

Federal Reserve Banks actually made.  True, disclosure of loan terms allows one to back into information about the borrower; inferences may be drawn that the bank that got the loan asked for it, that it got no more than it requested, and that the other terms were acceptable to the borrower.  But the fact of the loan (and its terms) cannot be said to be "obtained from" the borrower, however confident, creditworthy, and presumptuous the borrower may be.  The fact that information *about* an individual can sometimes be inferred from information *generated within an agency* does not mean that such information was *obtained from* that person within the meaning of FOIA.  Cf. Rose, 425 U.S. at 360-61 (FOIA exemptions are to be "narrowly construed").

The information requested by Bloomberg was generated within a Federal Reserve Bank upon its decision to grant a loan.  Like the loan itself, it did not come into existence until a Federal Reserve Bank made the decision to approve the loan request.  "[Courts] have read the requirement that information be 'obtained from a person' to restrict the exemption's application to data which have not been generated within the Government."  Board of Trade v. Commodity Futures Trading Comm'n, 627 F.2d 392, 403-04 (D.C.

11

Cir. 1980)); see also Judicial Watch, Inc. v. FDA, 449 F.3d 141, 148 (D.C. Cir. 2006) ("Unlike many other types of information subject to an agency's control, materials implicating Exemption 4 are generally not developed within the agency."). In an analogous case in this Circuit, involving a FOIA request to the Small Business Administration, Judge Curtin concluded that the agency's loan information was "generated by the [Small Business Administration] in the course of its involvement with its borrowers." Buffalo Evening News, Inc. v. Small Business Admin., 666 F. Supp. 467, 469 (W.D.N.Y. 1987).

Some courts have extended the protection of Exemption 4 to information beyond the raw data gathered from persons by the government. See, e.g., OSHA Data/CIH, Inc. v. U.S. Dep't of Labor, 220 F.3d 153, 162 n.23 (3d Cir. 2000) (holding that disclosure of a ratio derived by an agency from the numbers supplied by a person would disclose commercial information obtained from a person and would thus come within Exemption 4 if the information was confidential); (Gulf & W. Indus., Inc. v. United States, 615 F.2d 527, 530 (D.C. Cir. 1979) (holding that disclosure of a government report containing figures from which information

12

obtained from a company could be extrapolated would disclose information obtained from a person and came within Exemption 4). But these cases do not bear upon the present case, where what is requested is not merely the information collected and slightly reprocessed by the government, but disclosure of the agency's own executive actions. We conclude that they do not provide a reason to extend Exemption 4 to cover the information requested in this case.

The Board's chief argument is that, with respect to the Discount Window and the other programs at issue, the Federal Reserve Banks have no discretion in choosing whether to grant the requested loans--so that in effect, it is the borrowing bank that supplies to the Federal Reserve Bank the particulars of the loan that the Federal Reserve Bank will make as a matter of course. According to the Board, the Federal Reserve Banks did nothing but translate the loan requests (information "obtained from" the borrowing banks) into loan approvals for payout by compliant tellers. In other words, it argues, the information was "generated" by the borrowers, not the Federal Reserve Banks.

The Board's argument relies on the requested loans being granted automatically; only in that way would the

13

information Bloomberg seeks be the same as the information supplied by the borrowing banks and arguably not "generated" or "developed" by the Federal Reserve Banks.  This premise (even if it were decisive) is not supported by the record. According to Dr. Brian Madigan, a Board economist who submitted a declaration in this matter: Upon receipt of a "typical [Discount Window] borrowing request," the Federal Reserve Banks would "review the request, verify collateral and, *if approved*, enter the loan in the Reserve Bank's loan and accounting system."  Decl. of Brian F. Madigan ¶ 11 (emphasis added).  Since approval is required for the loan, it follows that withholding approval would prevent it.  In all the programs at issue, loans are made only upon the presentation of collateral when the loan is sought.  Id.

Moreover, as Dr. Madigan also explained, apparently with regard to all lending programs, "the Federal Reserve Banks lend only against *acceptable* collateral."  Id. (emphasis added).  The Board may publish in advance the collateral coverage it will require, and some forms of collateral are readily valued and presumptively acceptable; but collateral is scrutinized, the decision as to adequacy is made by the lender, and a loan is denied unless the

14

collateral is acceptable.  The acceptability of collateral may be readily anticipated by the borrower, and come as no surprise to either party, but it is not information that the borrower can be said to have generated or imparted to the lender.

In any case, even if the loans were granted automatically, they did not come into existence until the Federal Reserve Bank took executive action by granting the loan.  The only information sought is a summary report of actions that were taken by the government.  And it cannot be said that the government "obtained" information as to its own acts and doings from external sources or persons.

**III**

In the alternative, the Board argues that the information at issue was "obtained from" the Federal Reserve Banks, and that the Federal Reserve Banks themselves are "person[s]" under FOIA.  However, even if the Federal Reserve Banks were defined as persons under FOIA,[2] the

---

[2] This would require a finding that a Federal Reserve Bank is not itself an agency: a "person" includes "an individual, partnership, corporation, association, or public or private organization *other than an agency*."  5 U.S.C. § 551(2) (emphasis added).  Because we reject the Board's argument on a different ground, we need not decide that

information passed from them to the Board would still be subject to disclosure unless it is "privileged or confidential" within the meaning of Exemption 4.  See Nadler, 92 F.3d at 95.

We have stated that one way in which "information is confidential for the purposes of Exemption 4 [is] if its disclosure would have the effect . . . of causing substantial harm to the competitive position of the person from whom the information was obtained."  Inner City Press/Cmty. on the Move, 463 F.3d at 244.  The Board does not undertake to show that the Federal Reserve Banks are subject to competition, or that the disclosure of the requested information would cause competitive injury to the Federal Reserve Banks.  Cf. Nadler, 92 F.3d at 95 (information must be privileged or confidential to be withheld under Exemption 4).

The only prejudice or harm claimed by the Board for itself (and the only issue of prejudice or harm we consider) is that disclosure would impair its mission--to furnish critical infusions to distressed banks on a confidential basis--and thereby prevent loss of confidence, bank runs,

_____

question.

16

fluctuations of bank stock, and rippling harm to the banking system.  We are therefore asked to extend the reach of Exemption 4 to encompass the so-called "program effectiveness" test, adopted by the First and District of Columbia Circuits, which allows agencies to withhold information as confidential under Exemption 4 if they believe that withholding it "serves a valuable purpose and is useful for the effective execution of its statutory responsibilities."  9 to 5 Org. for Women Office Workers v. Bd. of Governors of Fed. Reserve Sys., 721 F.2d 1, 11 (1st Cir. 1983); see also Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 830 F.2d 278, 287 (D.C. Cir. 1987) (adopting program effectiveness test), overruled on other grounds by Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992) (in banc).

The "program effectiveness" test, if applied as the Board invokes it, would give impermissible deference to the agency, and would be analogous to the "public interest" standard rejected by the Supreme Court in the context of Exemption Five.  See Fed. Open Market Comm. of Fed. Reserve Sys. v. Merrill, 443 U.S. 340, 354 (1979).  In that case,

17

the agency's "principal argument [was] that Exemption 5 confers general authority upon an agency to delay disclosure of intra-agency memoranda that would undermine the *effectiveness of the agency's policy* if released immediately." Id. at 353 (emphasis added). The Supreme Court rejected that argument in terms that are instructive:

> [T]he [agency's] argument proves too much. Such an interpretation of Exemption 5 would appear to allow an agency to withhold any memoranda . . . whenever the agency concluded that disclosure *would not promote the "efficiency" of its operations or otherwise would not be in the "public interest."* This would leave little, if anything, to FOIA's requirement of prompt disclosure, and would run counter to Congress' repeated rejection of any interpretation of the FOIA which would allow an agency to withhold information on the basis of some vague "public interest" standard.

Id. at 354 (emphasis added).

The "public interest" standard rejected in Merrill is the functional equivalent of the "program effectiveness" test, as the Board invokes it: the agency gets to withhold whatever it deems harmful to disclose--and an agency's decision as to its own mission and effectiveness is the kind of thing that ordinarily commands deferential review. The Board and the Clearing House undertake to show that disclosure would harm the banks that borrowed (by disclosing

their prior distress) and the banking system as a whole (because banks under stress may hesitate to seek relief or rescue), and that these harms will reduce the effectiveness of measures critical to the banking system. The arguments are plausible, and forcefully made. But a test that permits an agency to deny disclosure because the agency thinks it best to do so (or convinces a court to think so, by logic or deference) would undermine "the basic policy that disclosure, not secrecy, is the dominant objective of [FOIA]." See Rose, 425 U.S. at 361.

The requirement of disclosure under FOIA and its proper limits are matters of congressional policy. The statute as written by Congress sets forth no basis for the exemption the Board asks us to read into it. If the Board believes such an exemption would better serve the national interest, it should ask Congress to amend the statute.

* * *

For the foregoing reasons, the judgment of the district court is affirmed.