**MAIN STREET LEGAL SERVICES, INC., Plaintiff,**

v.

**NATIONAL SECURITY COUNCIL, Defendant.**

**No. 13–CV–00948 (ENV).**

United States District Court, E.D. New York.

Aug. 7, 2013.

Ramzi Kassem, Douglas Craig Cox, Cuny School of Law, Long Island City, NY, for Plaintiff.

Amy Powell, DOJ/CIVIL/Federal Programs, Judson O. Littleton, U.S. Department of Justice, Washington, DC, Kathleen Anne Mahoney, United States Attorneys Office, Brooklyn, NY, for Defendant.

### MEMORANDUM & ORDER

VITALIANO, District Judge.

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, plaintiff Main Street Legal Services, Inc. ("Main Street") seeks an order directing the National Security Council ("the NSC" or "the Council") to produce records pertaining to the use of drone strikes for targeted killings of suspected international terrorists, including American citizens, as well as all NSC meeting minutes from the year 2011. (Compl. (Dkt. No. 1) at 1). The NSC has moved to dismiss the claim under Rule 12(b)(6) on the ground that the NSC is not an agency subject to FOIA. (Def.'s Mem. (Dkt. No. 14) at 1). For the following reasons, the NSC's motion to dismiss is granted.

### Background

#### I. Procedural History

By a letter dated November 27, 2012, Main Street submitted a FOIA request to the NSC seeking any and all records "related to the killing and attempted killing by drone strikes of U.S. citizens and foreign nationals," as well as all "[NSC] meeting minutes taken in the year 2011." (Def.'s Mem., Ex. A, at 1). The NSC responded by a letter, dated December 14, 2012 (but postmarked January 18, 2013), asserting that, as a unit within the Executive Office of the President ("EOP"), the NSC was not an "agency," as that term appears in FOIA, and therefore not subject to the statute's requirements. (Def.'s Mem., Ex. B.). Undeterred, Main Street filed the present action on February 20, 2013, resting solely on FOIA and seeking an order requiring the NSC to produce the requested records. (Compl. at 1–2). On May 10, the NSC moved to dismiss Main Street's claim, reiterating its earlier assertion that the NSC is not an agency subject to FOIA. (Def.'s Mem. at 1).

#### II. The NSC

The NSC was established by Congress in the National Security Act of 1947, 61 Stat. 496 (codified at 50 U.S.C. § 402), and was formally placed within the EOP in 1949. According to its enabling act, the NSC's primary function is to "advise the President with respect to the integration of domestic, foreign, and military policies relating to the national security so as to enable the military services and the other departments and agencies of the Government to cooperate more effectively in matters involving the national security." 50 U.S.C. § 402(a). The statute also directs the Council to "assess and appraise the objectives, commitments, and risks of the United States in relation to our actual and potential military power," and to "consider policies on matters of common interest to the departments and agencies of the Government concerned with the national security" in order to "make recommendations to the President in connection therewith." Id. §§ 402(b)(1)-(2). The President retains the authority to delegate additional responsibilities to the NSC as he deems necessary. Id. § 402(b).

The NSC is unique in its organizational structure in that it is chaired by the President personally. 50 U.S.C. § 402(a). Other Council members include the Vice-President, Secretary of State, Secretary of Defense, Secretary of Energy, and other senior-level officials. 50 U.S.C. §§ 402(a)(1)-(8). The President also appoints an Executive Secretary, who over-

sees the Council staff and reports directly to the Assistant to the President for National Security Affairs, more commonly known as the National Security Advisor. 50 U.S.C. § 402(c); *see Armstrong v. Exec. Office of the President*, 90 F.3d 553, 556 (D.C.Cir.1996). The NSC also consists of a number of subsidiary committees, such as the Committee on Foreign Intelligence, Principals Committee, and Interagency Policy Committee, which are chaired by either the National Security Advisor or Deputy National Security Advisor. 50 U.S.C. §§ 402(h)-(i).

## Discussion

### I. Standard of Review

When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir.2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). To survive the motion, the complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. To the extent there are disagreements or ambiguities of fact, the Court must construe all the facts in the light most favorable to the plaintiff and draw all reasonable inferences in his favor. *See Matson v. Bd. of Educ. of City School Dist. of N.Y.*, 631 F.3d 57, 72 (2d Cir.2011).

### II. FOIA

#### a. Legal Framework

■ Congress enacted FOIA in order to grant the public access to records held by federal agencies. "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978) (citation omitted). The statute describes the documents and information that may be requested, requires agencies to establish procedures for obtaining documents and information, and exempts certain materials from disclosure. *See generally* 5 U.S.C. § 552. A federal organization is only subject to FOIA if it falls within the act's definition of an "agency." *See id.* §§ 552(f)(1), 551(1). Not every corridor of power is covered under the Act, nor is every document kept in the offices located there subject to production. However, if an entity qualifies as an agency and improperly withholds documents, the requesting party may sue to compel their production after exhausting all available administrative remedies. *Id.* § 552(a)(4)(B). The statute provides for jurisdiction in the district in which the requesting party resides or has his principal place of business, the district in which the agency records are situated, or in the District of Columbia. *Id.* § 552(a)(4)(B).

#### b. The NSC is Not an "Agency" Subject to FOIA

■ Although the Second Circuit has not addressed the issue now before the Court, relevant case law abounds in the D.C. Circuit, a jurisdiction with considerable experience on FOIA matters. *See, e.g., Roman v. Nat'l Sec. Agency*, No. 07–CV–4502, 2009 WL 303686, at *5 n. 3 (E.D.N.Y. Feb. 9, 2009) ("[T]he Second Circuit has evidenced a willingness to look to the law of other circuits—particularly the D.C. Circuit—in the area of FOIA ....") (internal quotations omitted); *Inner City Press/Cmty. on the Move v. Bd. of*

*Governors of Fed. Reserve Sys.*, 463 F.3d 239, 244–45 (2d Cir.2006) (adopting D.C. Circuit precedent in a FOIA context). In *Soucie v. David*, 448 F.2d 1067, 1075 (D.C.Cir.1971), the D.C. Circuit concluded that an EOP component qualifies as an "agency" under FOIA if it retains "substantial independent authority in the exercise of specific functions." [1] The court expanded on *Soucie* in *Meyer v. Bush*, 981 F.2d 1288, 1293 (D.C.Cir.1993), where it described three factors a court should consider when determining an EOP entity's status under FOIA: (1) "how close operationally the group is to the President;" (2) "what the nature of its delegation from the President is, and;" (3) "whether it has a self-contained structure." [2] In essence, "[t]he closer an entity is to the President, the more it is like the White House staff, which solely advises and assists the President, and the less it is like an agency to which substantial independent authority has been delegated." *Armstrong*, 90 F.3d at 558. The three *Meyer* factors "are not necessarily to be weighed equally; rather, each factor warrants consideration insofar as it is illuminating in the particular case." *Id.*

Braced by its review of the *Meyer* factors, the court in *Armstrong* directly addressed whether the NSC is an agency subject to FOIA. The *Armstrong* court first determined that, contrary to the National Security Adviser's representations, the NSC "has a structure sufficiently self-contained that [it] *could* exercise substantial independent authority." *Id.* at 559–60 (emphasis added). Acknowledging some overlap between the NSC and White House staffs, the court concluded that "[t]he NSC staff is not an amorphous assembly from which ad hoc task groups are convened periodically by the President," but a "professional corps of more than 150 employees, organized into a complex system of committees and working groups" whose staff does not, by and large, intermingle with the President's immediate personal staff. *Id.* This remains an accurate description of the NSC's structure today. *See generally* Pres. Barack Obama, Presidential Policy Directive–1 (Feb. 13,.2009) ("PPD–1") (included as Exh. C to Def.'s Mem.) (describing structure and organization of NSC under the Obama Administration).

But, determining a FOIA controversy goes well beyond review of an organizational flow chart. Notwithstanding that the NSC's self-contained structure might *allow it* to wield substantial independent authority, it does not follow that it *in fact*

---

1. In 1974, Congress amended the FOIA definition of "agency" to include any "establishment in the executive branch of the Government (including the Executive Office of the President)." 5 U.S.C. § 552(f). However, reflecting the logic of *Soucie,* the legislative history makes clear that the new definition did not incorporate "the President's immediate personal staff or units in the Executive Office whose sole function is. to advise and assist the President." H.R. Conf. Rep. No. 1380, 93d Cong., 2d Sess. 14 (1974). *See also Armstrong,* 90 F.3d at 558 (noting that "Congress intended to codify *Soucie* " in the 1974 amendment).

2. *Main Street* insists that *Meyer's* three-part test is "wrong" and departs from *Soucie's*

"sole function" standard. (*See* Pl.'s Mem. (Dkt. No. 14) at 20–23). This proposition is, in a word, incorrect. *Soucie* makes clear that "agencies" under FOIA are those that retain "substantial independent authority [from the President] in the exercise of specific functions," 448 F.2d at 1075 and *Meyer's* three factors—an entity's organizational independence, its operational proximity to the President, and its delegated powers—are directly on point. As *Meyer* explains, the three-factor test is simply an "appl[ication] [of] *Soucie['s* ] [holding] to those who help the President supervise others in the executive branch." 981 F.2d at 1293. The two cases are in no way counterpoised.

exercises such independence. The court in *Armstrong* found that, despite its organizational complexity, the NSC was operationally "proximate to the President," who "chairs the statutory Council" himself, while his National Security Advisor, "working in close contact and under [his] direct supervision ..., controls the NSC staff." 90 F.3d at 558. Indeed, it could hardly be otherwise, given the President's role as commander-in-chief of the armed forces and his "unique responsibility for the conduct of foreign and military affairs." *American Ins. Ass'n v. Garamendi,* 539 U.S. 396, 415, 123 S.Ct. 2374, 156 L.Ed.2d 376 (2003) (internal quotations omitted); U.S. Const. art. II, § 2. The *Armstrong* court considered the fact of the President's chairmanship of the NSC to be "entitled to significantly greater weight ... than is the self-contained structure of the entity," such that the party requesting records could only prevail on a "strong showing indeed regarding the remaining factor under *Meyer.*" *Armstrong,* 90 F.3d at 558.

Current events have changed little, except perhaps to heighten the American government's concern over (and awareness of) threats to national security interests. The operational proximity between the President and the Council remains exceptionally close under the current administration. By statute, the President continues to preside over NSC meetings himself, receives advice from the Council "with respect to the integration of domestic, foreign, and military policies relating to the national security," directs any additional

functions the Council may carry out, receives recommendations and reports from the Council, appoints an executive secretary and non-statutory Council members, and oversees the composition of various committees. *See generally* 50 U.S.C. § 402. Considering these realities and the reasons for them, "[i]t is rather hard to imagine that ... any ... head of a department or agency who *reports directly* to the President would acquiesce in a [Council] decision that was thought not to represent directly and precisely the President's opinion." *Armstrong,* 90 F.3d at 561 (emphasis in original) (quoting *Meyer,* 981 F.2d at 1295). There can be little doubt regarding the unique operational proximity between the President and the NSC.[3]

Finally, *Armstrong* found—and the Court agrees—that the NSC's delegated powers consist overwhelmingly of advising and assisting the President directly in matters of national security. *Armstrong,* 90 F.3d at 560. The National Security Act of 1947 enumerates the following duties for the Council: "(a) advis[ing] the President upon national security matters; (b) coordinat[ing] the policies and functions of other departments and agencies regarding national security matters; (c) assess[ing] and apprais[ing] the objectives and commitments of, and the risks facing, the United States; (d) consider[ing] policies on national security matters; and (e) mak[ing] recommendations to the President." *Id.* at 560 (citing 50 U.S.C. §§ 402(a)-(b)). The language of the statute simply excludes "any non-advisory function[s]." *Id.* at 560.

---

3. Main Street contends that reliance on the "operational proximity" factor of *Meyer* is improper because its consideration would "virtually [exclude] every person or entity within the [EOP] ... from the FOIA." (Pl.'s Mem. at 21–22). On the contrary, no single factor in the *Meyer* test is dispositive, and an EOP office that is highly proximate to the President may still be an "agency" under FOIA if (for instance) its delegated functions accord it some significant measure of independence. In fact, the court in *Meyer* cites various EOP offices that *were* properly found to be "agencies" under FOIA, including the Office of Management and Budget, the Office of Science and Technology, and the Council for Environmental Quality. *See Meyer,* 981 F.2d at 1291–92.

The *Armstrong* court then considered, properly, whether the President had delegated any non-advisory functions the NSC and analyzed several Executive Orders and National Security Decision Directives issued by Presidents since the Council's creation more than six decades ago. *Id.* at 561–65. The court rejected the disappointed FOIA applicant's argument that the NSC had "accreted authority to act independently in a variety of areas" and concluded that the NSC staff "exercises no substantial authority either to make or to implement policy" independent of the President, serving a unique and "quintessentially advisory" role only. *Id.* at 561. For this reason, as well as the Council's unique proximity to the President, *Armstrong* held that, despite its organizational complexity, the NSC was not an "agency" subject to FOIA. *Id.* at 565. The Court finds no reason to depart from *Armstrong's* thoroughly persuasive and well-articulated reasoning.

Main Street, of course, protests vigorously, deriding *Armstrong* as both incorrect and outdated, and contends that the NSC's role has changed significantly since that case was decided in 1996. In particular, Main Street asserts that the NSC has been delegated "significant independent authority in a variety of areas ... by Executive Order," a claim it buttresses with citations to PPD–1. (Pl.'s Mem. at 14–15). But, by its very language, PPD–1 belies this contention. That directive makes crystal clear that President Obama's purpose in issuing it was to confirm his direction to the NSC to "*assist me* [i.e., the President] in carrying out *my* responsibilities in the area of national security." PPD–1 at 1 (emphasis added). The directive further explains that the NSC "shall be the principal forum for consideration of national security policy issues *requiring Presidential determination*" and "shall *advise* and *assist me.* in integrating all aspects of national security policy as it

affects the United States." *Id.* (emphasis added). Moreover, "[a]long with its subordinate committees, the NSC shall be *my* principal means for coordinating executive departments and agencies in the development and implementation of national security policy." The directive all the more compels the conclusion that, to the extent the Council and its subcommittees are involved in policy formation or implementation, their duties do not involve the kind of independence from the President that would characterize the operations of an "agency" within the meaning of FOIA, nor are those duties "substantial" in comparison to the NSC's fundamental role as an advisory body.

Similarly, the Executive Order that plaintiff cites as its primary evidence of the NSC's "independent authority" (*see* Pl.'s Mem. at 16) actually reinforces the transparently advisory nature of the Council. *See* Exec. Order No. 13,470, 73 Fed. Reg. 45,325, Sec. 1.2(a) (July 30, 2008) ("The [NSC] shall act as the highest ranking executive branch entity that *provides support to the President* for review of, guidance for, and direction to conduct all foreign intelligence, counterintelligence and covert action, and attendant policies and programs.") (emphasis added). Notably, the other Executive Orders that Main Street cites employ similar language. *See generally, e.g.,* Exec. Order No. 13,618, 77 Fed.Reg. 40,779, Sec. 3 (July 6, 2012) (establishing a fundamentally advisory Executive Committee on National Security and Emergency Preparedness Communications under the NSC system and incorporating PPD–1's instructions). Although plaintiff relies heavily on references to policy "implementation" in these Orders, (*see generally* Pl.'s Mem. at 14–18), it ignores the essential truth that these duties are not *substantial* when considered in the context of the NSC's overwhelmingly advisory *raison d'etre,* and fails to consider that any

policy-making or—implementing authority granted to the NSC is necessarily and profoundly circumscribed by the President's unique responsibility over national security matters.

The residue of plaintiff's arguments is equally unavailing. While Main Street asserts that *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980) supports its position, the Supreme Court in that decision did not actually address or analyze whether the NSC was subject to FOIA. Rather, it merely suggested in dicta that a House of Representatives Report from 1974 *"indicat[ed]* that the [NSC] is an executive agency to which the FOIA applies." *Kissinger*, 445 U.S. at 156, 100 S.Ct. 960 (emphasis added). The Court there did not find, however, that the NSC *was* an "agency" under FOIA, but held only that the requested records pertained to conversations that then–National Security Advisor Henry Kissinger had had with President Nixon solely in Kissinger's capacity as a presidential advisor, and were thus exempt from FOIA. *Id.* at 156–57, 100 S.Ct. 960. *Kissinger* was not out of harmony with, nor certainly did it bar, the D.C. Circuit's holding in *Armstrong*. Seventeen years after *Armstrong* and 33 years after *Kissinger*, the same is true today.

■ Moreover, while it is true that the NSC previously considered itself subject to FOIA and developed regulations to that effect, it withdrew those regulations nearly 20 years ago, just as the Justice Department's Office of Legal Counsel ("OLC"), in 1993, withdrew a 1978 opinion concluding that the Council was an "agency" under

FOIA. (*See* Pl.'s Mem. at 18, 20). As the D.C. Circuit has taught, a government unit's "past views have no bearing on the legal issue whether [the] unit is, in fact, an agency subject to FOIA." *Citizens for Responsibility and Ethics in Washington v. Office of Admin.*; 566 F.3d 219, 225 (D.C.Cir.2009). The NSC's and OLC's prior positions are simply irrelevant to the current organizational and operational realities presented in the case submitted for the Court's determination.

■ Also irrelevant are Main Street's assertions that the NSC has issued regulations under the Privacy Act, and that it is not currently subject to the Presidential Records Act (which excludes documents from agencies subject to FOIA). (*See* Pl.'s Mem. at 6–7). These two statutes are separate from FOIA and are to be interpreted in light of their *own* legislative purposes, goals, and histories. *See, e.g., Armstrong*, 90 F.3d at 553 (holding that, by implicitly incorporating the *Soucie* test in the PRA, Congress intended to rely on the courts for interpreting whether government entities were "agencies"); *see also Alexander v. F.B.I.*, 971 F.Supp. 603, 605–07 (D.D.C.1997) (finding that two EOP offices were "agencies" under the Privacy Act despite prior holdings that they were *not* "agencies" under FOIA). In the Court's view, *Armstrong*, undisturbed by any subsequent decision or Act of Congress, remains good law, and Main Street's arguments to the contrary cannot carry the day.[4]

### Conclusion

For the reasons detailed above, the Court finds that the NSC is not an "agen-

---

4. Main Street requests discovery over "additional non-public information relevant to the authorities of NSC entities." (Pl.'s Mem. at 23–24). However, "[d]iscovery is not favored in lawsuits under the FOIA," *Harrison v. Fed. Bureau of Prisons*, 681 F.Supp.2d 76, 80 (D.D.C.2010) (internal quotations omitted), and the available public records describing the NSC's structure, purpose, and functions are wholly sufficient for a proper adjudication of the NSC's motion. Consequently, Main Street's request for discovery is denied.

cy" under FOIA, and is, therefore, not subject to the requirements set forth in that Act. Accordingly, the NSC's motion to dismiss under Rule 12(b)(6) is granted and the complaint is dismissed.

The Clerk of Court is directed to enter judgment and to close this case.

So Ordered.